## BRYAN and wife *against* BRADLEY.

*A*, on the 3d of *November* 1842, during his last sickness, executed a deed of a parcel of land to his daughter *C*, expressed to be in consideration of ten dollars received of her, and inserted in the deed, immediately after the description of the premises, a clause in these words : " reserving and giving the use and improvement of the premises to my wife *B*, so long as she remains my widow." This deed *A* placed in the hands of *D*, with directions to keep it, unless *A* should otherwise direct, until his death, and then to deliver it to *C*, to be retained by her. *A* had previously, mostly within the same year, executed similar deeds of other portions of his real estate to other persons, which he placed in the hands of *D*, with similar directions. On the 21st of *November*, 1842, *A* died, and *B* took possession of the land described in the first-mentioned deed. In ejectment brought by *C* against *B* for such land, it was held, 1. that the deed in question was intended as a testamentary disposition, so far at least as it respects the provision which it makes for *B*; 2. that such intention is not rebutted, by the fact that the conveyance to *C* is expressed to be for a pecuniary consideration received from her, and not for love and affection ; 3. that though this deed was thus intended, yet as it wanted the requisite formalities of a will, it was effective to alienate the title, only as a conveyance; 4. that by immemorial usage and repeated recognition in this state, such a deed has become one of our common assurances of real estate, and is a valid conveyance ; 5. that aside from any usage peculiar to this state, *C* could not recover in this case ; for her title was founded solely on this deed, under which she could claim no estate, unless as a feoffment at common law, or as a deed of bargain and sale operating by the statute of uses ; in neither of which cases, was any estate granted to her, during the widowhood of *B*.

A conveyance of land in this state, need not, in any case, be accompanied by livery of seisin.

The principles of the *English* statute of uses, (27 *Hen.* 8. *c.* 10.) by which the legal freehold is vested in the person entitled to the use, have been incorporated into, and are part of, our common law.

The language of the deed in question is sufficient to constitute a covenant by *A*, in consideration of marriage, to stand seised of the premises, for the use of *B*, during her widowhood, thereby raising a use in her favour, which, by the principles of the statute of uses, is converted into a legal estate in her, to take effect on the death of *A*.

Deeds are to be so construed as to effectuate, if possible, the intent of the parties; and when the intent to pass the land, one way or another, is apparent, the conveyance may be good either way.

New-Haven,
July, 1844.

Bryan
*v.*
Bradley.

THIS was an action of ejectment for a parcel of land in *Branford;* tried, on the general issue closed to the court, at *New-Haven, January* term, 1844, before *Hinman,* J.

The plaintiffs, in support of their title, offered in evidence a deed of the demanded premises, executed by *Timothy Bradley,* on the 3d of *November,* 1842, to his daughter *Irene Bryan,* one of the plaintiffs, and wife of *William Bryan,* the other plaintiff. The consideration expressed in the deed, was ten dollars, received of his daughter *Irene Bryan.* Immediately after the description of the premises, and before the *habendum,* the following clause was inserted : " reserving and giving the use and improvement of the above described premises to my wife *Irene,* so long as she remains my widow." In every other respect, the deed in question was in the usual form of deeds of warranty in this state, and was executed with the formalities required by statute.

*Timothy Bradley,* the grantor, died on the 21st of *November,* 1842. Immediately upon his death, his widow, *Irene Bradley,* named in the deed, took possession of the demanded premises; and the defendant, her son, *Gurdon Bradley,* at the commencement of this suit, was, and still is, in possession thereof, holding the same in her right.

The defendant offered evidence to prove, that said deed was executed by *Timothy Bradley,* in his last sickness, *viz.* on the 3d of *November,* 1842 ; and that on the same day, he placed it in the hands of *William Tyler,* Esq., the magistrate who drew it, witnessed it, and took the acknowledgment of it, with directions to keep it, unless he, the grantor, should thereafter otherwise direct, until his death, and then to deliver it to said *Irene Bryan,* his daughter, to be recorded and retained by her; that, on the 23d of *November,* 1842, after

*New-Haven,*
*July, 1844.*

Bryan
*v.*
Bradley.

the death of *Timothy Bradley*, said *Tyler* caused said deed to be recorded, and delivered it to said *Irene Bryan ;* and that the value of the premises was not less than six hundred dollars. The defendant further offered evidence to prove, that *Timothy Bradley* had, during the year 1842, executed seven other deeds, in the year 1841 one other deed, and in the year 1840 four other deeds, all of which, about the time of their respective dates, were, in like manner, placed in the custody of said *Tyler,* to be proceeded with in the same manner, as to the holding thereof and the delivery thereof to the several grantees, as in regard to the first-mentioned deed ; all of which deeds said *Tyler,* on the 23d of *November,* 1842, caused to be recorded and delivered to the several grantees therein named ; that the value of the property described therein was          dollars ; and that said property, with that described in the first-mentioned deed, comprised all the grantor's real estate. The defendant further offered evidence to prove, that the first-mentioned deed was given in consideration of blood and affection, besides the sum of money expressed therein.

To all this evidence the plaintiffs objected, and the court excluded it, and thereupon, (*pro forma,*) rendered judgment for the plaintiffs, to recover of the defendant the demanded premises, with one dollar damages, and costs. The defendant moved for a new trial.

*R. I. Ingersoll* and *C. A. Ingersoll,* in support of the motion, contended, 1. That a deed of land, reserving a life estate to the grantor, or to the grantor and his wife, or to the wife of the grantor, is a mode of conveyance recognized by the laws of this state. It is sanctioned by a long course of practice, coeval with our government, and secures to the one in whose favour the reserved estate is, a legal title to the estate thus reserved. *Barrett* & ux. v. *French,* 1 *Conn. R.* 354. 362. n. *Fish* v. *Sawyer,* 11 *Conn. R.* 545. 550.

2. That the deed will operate to secure to the widow of *Timothy Bradley* the legal estate in the premises, *as a covenant to stand seised.* If it should be held, that the only consideration, which will support a covenant to stand seised, is the consideration of *blood and affection,* it will appear by the deed itself, that *that* consideration existed here. A deed from

parent to child will be presumed to be in consideration of *New-Haven,* July, 1844. blood and affection, though a valuable consideration is expressed in the deed. Here the only consideration for the covenant in favour of the wife, was the consideration of affection.

Bryan *v.* Bradley.

No other consideration appears on the deed. At any rate, in such a deed as this, the consideration of blood and affection may be proved, when it is not expressed ; and therefore, such a deed will be construed to be a covenant to stand seised. 2 *Bla. Com.* 338. n. 59. *Jackson* d. *Trowbridge* & ux. v. *Dunsbagh,* 1 *Johns. Ca.* 91. *Jackson* d. *Wood* & al. v. *Swart,* 20 *Johns. R.* 85. *Fish* v. *Sawyer,* 11 *Conn. R.* 545. *Wallis* v. *Wallis,* 4 *Mass. R.* 135. *Parker* v. *Nickols,* 7 *Pick.* 111. *Gale* & ux. v. *Coburn,* 18 *Pick.* 397. *Brewer* v. *Hardy,* 22 *Pick.* 376. That another consideration than that expressed in the deed, may be shown, see *Belden* v. *Seymour,* 8 *Conn. R.* 304. *Hatch* v. *Straight,* 3 *Conn. R.* 31. *Goodell* v. *Pierce,* 2 *Hill,* 659.

3. That the deed in question is a feoffment, and not a bargain and sale. It is a feoffment to uses, by which the grantee becomes seised to the use of the widow, during her life ; which use the statute of uses will execute in her, and make her the legal and complete owner of the land, during her life. *Thatcher* v. *Omans,* 3 *Pick.* 521. *Emery* v. *Chase,* 5 *Greenl.* 232. 8 *Conn. R.* 318. per *Hosmer,* Ch. J. *Durant* & al. v. *Ritchie,* 4 *Mason,* 45.

4. That at all events, there appears a trust, created by this deed, in favour of the widow of the grantor, which was to be executed, and which it was the duty of the grantee to execute.

The only way of executing the trust, is, by permitting the widow to occupy the land. Under such a deed, an action of ejectment cannot be sustained against the *cestui que trust.* *Foote* v. *Colvin,* 3 *Johns. R.* 216. 11 *Johns. R.* 97.

*Baldwin* and *Kimberly,* contra, contended, 1. That the evidence offered by the defendant, was wholly immaterial, and would not, if admitted, affect the result. In the first place, the value of the premises is immaterial. The deed is upon a sufficient *valuable* consideration, expressed upon its face. There is, therefore, no resulting use to the grantor. Secondly, the deed cannot, by parol testimony, be made to have the effect of a *testamentary disposition.* It has neither the

*Bryan*
*v.*
*Bradley.*

form, nor the statute requisites, of a devise. *Stewart* v. *Stewart,* 5 *Conn. R.* 317. Thirdly, the deed, when delivered to the grantee, after the death of the grantor, took effect by relation from the time of the first delivery, and is to be construed as if in fact delivered to the grantee at the time of its execution. *Belden* v. *Carter,* 4 *Day* 56. *Wheelwright* v. *Wheelwright,* 2 *Mass. R.* 442. *Foster* & ux. v. *Mansfield,* 3 *Metc.* 412. 415. *Stewart* v. *Stewart,* 5 *Conn. R.* 317.

2. That the wife takes nothing directly, by virtue of the clause " reserving and giving," &c. As a reservation or gift, it is void. In the first place, a reservation in a deed to a *stranger* to the title, is void. *Com. Dig. tit.* Fait. E. 5. *Hornbeck* v. *Westbrook,* 9 *Johns. R.* 73. *Jackson* d. *Wood* & al. v. *Swart,* 20 *Johns. R.* 85. *Moore* v. *The Earl of Plymouth,* 3 *Barn.* & *Ald.* 66. (5 *E. C. L.* 232.) *Chetham* v. *Williamson,* 4 *East,* 479. *Co. Litt.* 47. *a.* Secondly, a grant by a husband to his wife, is void. 2 *Kent's Com.* 109. 1 *Sw. Dig.* 39. *Hutton* v. *Dibble,* 1 *Day,* 221. 235. *Humphry* v. *Humphry,* 1 *Day,* 271. *Martin* v. *Martin,* 1 *Greenl.* 394. *Rowe* v. *Hamilton,* 3 *Greenl.* 63.

3. That the deed cannot operate as a covenant by the grantor with the grantee to stand seised of the premises to the use of his wife, during widowhood. In the first place, no such covenant is expressed in the deed. Secondly, the grantor, by the deed, has parted with all his estate in the premises, and has reserved nothing out of which the use can arise. The requisites of a covenant to stand seised, are, first, a person seised at the time the use arises; and secondly, a *cestui que use,* at the same time, in whom the use may vest. *Chudleigh's Case,* 1 *Co.* 120. 126. The grantor must be seised, at the time of the covenant or grant, and must continue seised until the use arises. 4 *Cruise's Dig.* 121. The use must arise out of the seisin or right, which the covenantor has at the time. But here the grantor was not seised of the premises at the time of his death. See *Foster* & ux. v. *Mansfield,* 3 *Metc.* 412. 415. Thirdly, such construction is inconsistent with the express terms of the deed; the grant being to *Irene,* her heirs and assigns, to *her own use—per verba de presenti.*

STORRS, J. We have no doubt that, independent of the other grounds urged by the defendant, the deed on which the

parties rely, is valid, by the usage of this state, to vest in the widow of *Timothy Bradley,* under whom the defendant claims, an estate in the land in question, during her widowhood.

It was clearly intended to be in the nature of a testamentary disposition, so far at least as it respects the provision which it makes for the wife of the grantor. This plainly appears from its phraseology, the relation existing between them, the time during which the use is limited to her, the peculiar condition on which that use depends, and the fact that he retained the controul and disposition of the deed until his death, which is proper to be considered in reference to this view of the case. Nor is such intention rebutted, by the fact that the conveyance to the daughter is expressed to be for a pecuniary consideration, and not for love or affection; for there being no connexion between the child and the wife as to the different estates given to them by this instrument, the consideration of the conveyance to the one sheds no light on the motive for the other; and therefore, the proof of its being intended to be in the nature of a testamentary provision for the wife, is not thereby repelled.

Although, however, this deed was thus intended, it is not effectual as a last will and testament, because it wants the formalities required by our statute respecting wills, particularly, the authentication by three subscribing witnesses; and it can, therefore, be sustained only as an alienation of real estate, by one of those assurances termed a conveyance. *Stewart* v. *Stewart,* 5 *Conn. R.* 317.

The mode of conveyance resorted to in this deed, has undoubtedly been practised in this state from a period beyond memory, and probably from the first establishment of the government, especially for the purpose of making family settlements of estates, and has never been attended with any practical inconvenience. As remarked by Ch. J. *Swift,* in *Barrett* v. *French,* 1 *Conn. R.* 163. "this constant and immemorial usage is sufficient to make it a part of our common law; and a deed of this description may be termed one of the common assurances of real estate." As such, it stands on the same solid foundation as those common assurances in *England,* which derive their force and effect from long usage and recognition. On this ground alone, we do not hesitate to hold it good throughout, and should do so, even if it were found

to trench upon rules of the *English* common law, which, although perhaps anciently founded in practical and substantial reason and good sense, have now become merely technical or formal. We should otherwise destroy a well established rule of property, under which very many of the titles of our citizens have been acquired, and overturn the foundation of those titles, to an alarming extent.

It is not however necessary to place the defence in this case, founded on the validity of this provision for the wife of the grantor, on the ground of any peculiar local usage.

The plaintiffs must recover on the strength of their own title. It is to be observed, that their title is derived from the deed in question, under which the defendant also claims. It is important, therefore, to ascertain the true character and operation of that deed; when it will appear, that, whatever is its true character, it furnishes a perfect defence in this suit, on any ground upon which the plaintiffs can claim title under it.

The plaintiffs obviously can claim no estate under this deed, unless as a feoffment, operating at the common law, by transmutation of possession, or as a deed of bargain and sale operating by the statute of uses. Let it be considered in both of these views.

The only objection made to this deed as a feoffment, (in which light this court regards it,) is, that it was not accompanied with livery of seisin. The language of the grant is plainly appropriate and sufficient for such a conveyance. Although in the early settlement of this state, there were instances where livery of seisin was formally conferred, as appears by an endorsement or memorandum on the deed, none of recent date are to be found; and it has never been the general practice here to accompany a conveyance of land with that ceremony. Nor do the reasons, which made it necessary or proper in *England,* and those other countries where the feudal system prevailed, exist here. It was required there, originally, on principles growing out of that peculiar institution alone. It is doubtful whether at first it was customary to call witnesses to the ceremony; but at a subsequent period they were invariably present; the effect of which was, not only to furnish evidence of the transaction, but to give general notoriety to the transfer; which last ob-

*New-Haven,*
July, 1844.

Bryan
*v.*
Bradley.

ject became ultimately of great importance, although by that means but imperfectly attained. As a remnant of the feudal law, it is still retained in *England*, rather however in theory than practice, because, in consequence of the inconvenience of requiring the ceremony of livery, conveyances by feoffment are now of rare occurrence, and modes of alienation under the statute of uses, which dispenses with that ceremony, have been devised, and are almost universally used. 2 *Sand. Us.* 11. 1 *Stephens' Com.* 491. 4 *Kent's Com.* 477. And in order to give that notoriety to these modes, which was previously supposed to be furnished by livery before witnesses, their *statute of enrolments* was passed, which is similar in its provisions and policy to our laws requiring the recording of conveyances of land. If conveyances by feoffment were now practised there, to any considerable extent, it cannot be doubted that the provisions of the statute of enrolments would be enacted as to that species of conveyance; since it is obvious, that it would, at the present day, be intolerable that the public should have no other means to ascertain the ownership of lands than what would be furnished by taking witnesses upon it to see it literally delivered. Our registry laws apply equally to feoffments and other conveyances; which shows, that the ceremony of livery was considered, by the legislature, as wholly inadequate for the purpose of giving publicity to the alienation. Since, therefore, livery of seisin has no place here on feudal principles, and is not only inadequate for the purpose of notoriety, but our registry laws were enacted expressly, and are amply sufficient, for that purpose, there seems to be no substantial reason why that useless ceremony should be required. Although this point has never come directly before our courts for decision, this is the view which has been taken of the subject, by our most eminent jurists, and which has been adopted in *Massachusetts* and the other *New-England* states, which have similar provisions to ours for the registry of conveyances. 4 *Mass. R.* 541. 5 *Id.* 352. 6 *Id.* 24. 7 *Id.* 381. 488. 13 *Id.* 443. 15 *Id.* 210.

Viewed as a feoffment, the deed in question either excepts from the estate granted the use of the land during the widowhood of the wife, or conveys it to the grantee for her use during that time, according as the clause succeeding the grant, is to be construed; "*Reserving and giving the use*

*and improvement of the above described premises to my* [the grantor's] *wife Irene, so long as she remains my widow."*

If it had merely said, *reserving* the use and improvement, &c., there could be no doubt that it would have been good, not as a *reservation,* technically so called, but as an *exception.* It would be synonymous with the word *retaining.* According to *Shep. Touchst.* 80., " a reservation is a clause in a deed, whereby the feoffer, donor, lessor, grantor, &c. doth reserve some new thing to himself out of that which he granted before ; an exception is a clause in a deed, whereby the feoffer, &c. doth except somewhat out of that which he had granted before by the deed," and hereby the thing excepted is exempted, and does not pass by the grant, neither is it parcel of the thing granted. A reservation differs from an exception in this, that the latter is ever part of the thing granted, and of a thing *in esse* at the time ; but the former is of a thing newly created or reserved out of a thing demised that was not *in esse* before. No technical words are necessary in order to create either ; and the real sense of the instrument is to prevail ; and in several of the cases of exceptions put in the *Touchstone,* the word *reserve* is used. And *Comyn* says, " an exception may be made by the word *reserving*, which has sometimes the force of an *exception* or *saving.*" *Dig. tit.* Fait. E. 5. *Co. Litt.* 143. *a.*

But it is said, that here the whole clause shows an intention to except the use, during the widowhood of the wife, not to the grantor, but to his wife, who is a stranger to the consideration ; for that the expression is, " reserving *and giving to the wife* the use," &c. and that the word *reserving* is therefore used on behalf of the same person as the word *giving.* If this indeed be the true construction of the clause, it probably would not be effectual as an exception, because the office of an exception is not to confer an interest upon those not parties to the deed ; nor as a reservation, because it would be for the benefit of a stranger to the consideration, would create in him a freehold estate *in futuro,* and would not be of a thing not before *in esse* ; nor as a direct grant to the wife, because this it would not be competent for a husband to make. Considering the proper meaning of the word *reserving*, and that it signifies the negative act of retaining, withholding, not granting, it appears to us to be extremely doubtful, at most, wheth-

*New-Haven,*
July, 1844.

Bryan
*v.*
Bradley.

er even the grammatical structure of the sentence requires us to couple it, in the sense claimed, with the word *giving,* which implies a positive act of transferring to another. Waiving, however, any hypercriticism on the words used, it is, at all events, perfectly plain, from the language of the whole deed taken together, that it was the grantor's intention not to grant to his daughter the land, during his wife's widowhood, although he might also have erroneously supposed, that his wife would take the use of it during that period ; and it is sufficient to defeat this action, that during that time no estate was granted to the daughter, in whose right the plaintiffs claim. But where the words "giving to the wife" may be separated in sense from the word " reserving," so as to give legal effect to a part of the phrase, and that in conformity with the plain intention of the grantor, and his intention can be thereby, at least in part, carried into effect, when, by uniting these different parts of the sentence, and applying them both to the wife, the whole would be rendered inoperative, it is clearly in accordance with the general rules for the construction of deeds, that the most benign construction should prevail, *ut res magis valeat quam pereat.* Considering, therefore, the clause in question as an exception, the estate in the land, during the widowhood of the grantor's wife, does not pass, by the deed, to the grantee.

If however this clause is to be deemed void, both as an exception and as a reservation, the plaintiffs would not be relieved ; for in that case, it would, on a just construction, constitute a declaration of a use in the land to the grantor's wife during her widowhood, which would make the deed a feoffment to uses, and the grantee a trustee for the wife during that period ; which use would be executed, on the principles of the statute of uses, so as to vest a legal estate in her during her widowhood.

That the principles of the *Stat.* 27 *Henry* 8., termed *" the statute of uses,"* are to be considered as incorporated into, and therefore a part of, our common law, is now well settled. This point appears to have been first solemnly determined, in *Bacon* v. *Taylor, Kirby's R.* 365. ; and was subsequently established, in *Barrett* v. *French,* 1 *Conn. R.* 354. where the reservation in the deed then in question was sustained, as a conveyance only by way of covenant to stand seised, which

*New-Haven,*
*July, 1844.*

Bryan
*v.*
Bradley.

could not be, except by the operation of that statute. The forms of our ancient conveyances, some of which are appended to the last-mentioned case, and the continuance of those forms down to the present time, also show, satisfactorily, that it has always been considered here, that the provisions of that statute were in force ; since those forms are generally such as were brought into use in consequence of the passing of that statute in *England,* and are more peculiarly adapted to operate as conveyances under its provisions than by the common law. The same effect is given to the provisions of that statute, in the other states, whose general policy is similar to ours, excepting where they are superseded by express legislation. 6 *Mass. R.* 24. 14 *Id.* 491. 2 *Conn. R.* 115.—remarks of *Hosmer,* J. The terms of that statute are so familiar, that it is only requisite to say, that in order to remedy certain evils, not necessary here to be detailed, which had been experienced from the practice then prevalent of conveying the freehold estate in lands to one person for the use of another, that statute provided, that where any person then was, or thereafter should be, seised of any lands to the use of any other person, the person having such use should be, and be deemed to be, in the lawful seisin of such estate in said lands, as they had, or should have, in the use thereof; or, in other words, that the legal freehold should vest in the person entitled to the use. By the operation of that statute, no transmutation of possession, by means of livery of seisin, was required, as by the common law, in order to transfer a freehold estate in lands ; but all that was necessary for that purpose, was, that one seised of land should convey the use thereof to another, when the statute executed the use, as it was termed, by immediately transferring it into possession, and the legal title was thus, *tamquam uno flatu,* passed to the *cestuy que* use, without any further ceremony. No technical language is necessary, in order to raise a use ; it is sufficient that an intent to do so is plainly evinced, by the declaration of the feoffer or grantor. 1 *Sand. Us.* 314. *Vin. Abr. tit.* Uses. O. 4.

The language of the deed now before us, " *reserving and giving to my wife,*" &c. is such as to show beyond a doubt, that the grantor intended that his wife should have the use of the land, here demanded, during her widowhood. To the

limitation of such a use no just exception can be taken. *New-Haven,* July, 1844. Viewed then as a feoffment to uses, the deed constitutes a legal alienation or conveyance to her of an estate for that period.

Bryan *v.* Bradley.

In order, however, to transfer the legal estate under the statute of uses, an express declaration of a use is not necessary. It is sufficient that a trust is created by contract, which a court of equity, by virtue of its general jurisdiction over trusts, would enforce, by decreeing a conveyance to the *cestuy que trust*, when it becomes a use which the statute executes. Hence, the origin of conveyances by *bargain and sale*, where one seised of a freehold property corporeal, for a pecuniary consideration, bargains and sells it to another; and by *covenant to stand seised,* where one so seised, covenants, in consideration of blood or marriage, that he will stand seised of the property to the use of his wife, child or kinsman for life, in tail, or in fee; in which cases, the contract operates as a conveyance of a legal estate, by raising a use in favour of the party for whose benefit it is made, and the statute immediately annexing thereto the possession. The operation of these two conveyances is the same; the only distinction between them being, that the former is founded on a pecuniary consideration, and the latter on that of blood or marriage; and the practice of distinguishing them by these names, having, as is supposed, grown out of the circumstance that the *English* statute of enrolments applied to the former, but not to the latter. *Jackson* d. *Trowbridge* & ux. v. *Dunsbagh,* 1 *Johns. Cas.* 91. *Rogers* v. *The Eagle Fire Company of New-York,* 9 *Wend.* 611.

If the plaintiffs do not take an estate in the land in controversy, by this deed, as a feoffment at common law, they can derive an estate under it, only as a deed of bargain and sale under the statute of uses; and as such only it would undoubtedly be operative in *England,* there being a want of livery of seisin. But by the same principles on which it vests an estate in the plaintiffs as a bargain and sale, it is available to the grantor's widow, under whom the defendant claims, as a covenant by the grantor with the grantee, founded on the consideration of marriage, that said grantor would stand seised of the land for her use, during her widowhood, by which a use is raised in her favour, which is, on the principles before

*New-Haven,*
*July, 1844.*

*Bryan*
*v.*
*Bradley.*

stated, immediately converted into a legal estate in her, to take effect on the death of her husband. That the language used is sufficient to constitute such a covenant, is obvious, and indeed has not been questioned. No technical or formal words are requisite for that purpose ; but any words will do, that sufficiently indicate the intention. 4 *Kent's Com.* 481. *The Lord Paget's case,* 1 *Leon.* 194. *Crossing* v. *Scudamore,* 1 *Vent.* 137. *Lude* v. *Baker* & al. 2 *Vent.* 149. *Cheding-ton's case,* 1 *Co.* 153. *Wiseman's case,* 2 *Co.* 15. *Smith* v. *Risley* & al. *Cro. Car.* 529. *Hore* v. *Dix,* 1 *Sid.* 25. *Jackson* d. *Houseman* & al. v. *Sebring* & al. in err. 16 *Johns. R.* 515. *Platt on Cov.* 48, 9.

Nor need such covenant be expressed to be in consideration of marriage, where it is for the benefit of a wife, or of blood, when in favour of a child or kinsman ; it is sufficient that it appears on the face of the deed, that there exists the relation of marriage in the one case, or of consanguinity in the other, when the covenant will be referred to, and be deemed to be founded on, that consideration, where it does not purport to be executed for a different one. 2 *Sand. Us.* 81. 2 *Inst.* 672. *Doe* d. *Milbourne* & ux. v. *Simpson,* 2 *Wils.* 22. So where there is a deed of bargain and sale of one estate to one person, expressed to be for a pecuniary consideration, and it includes also a covenant to stand seised of another estate in the same land for the use of another person, and discloses the appropriate consideration for such covenant, of blood or marriage, there is no good reason why it should not operate in a two-fold capacity, as a conveyance of such estates to both of the *cestuis que use* respectively. In the case before us, the relationship of marriage appears, as the use is expressly limited, by the grantor, to his " wife, *Irene.*" Here, then, is a competent covenantor, covenantee, and *cestuy que use ;* a sufficient and appropriate consideration ; and a plain declaration of intent, in words which are undoubtedly sufficient to import a covenant to stand seised.

It is objected, that this instrument was not designed to operate as this particular species of conveyance. But it is a rule in the construction of deeds, that they are to be so construed as to effectuate, if possible, the intent of the parties ; and that when the intent is apparent to pass the land, one way or another, there it may be good either way ; *(Touchst.*

New-Haven,
June, 1844.

Bryan
v.
Bradley.

83.) by which word *intent*, as remarked by Ch. J. *Willes*, (2 *Wils.* 78.) is not meant to pass the land, by *this* or *that* particular kind of deed, or by any particular mode or form of conveyance, but that the land shall pass at all events, one way or other ; and although according to some of the old cases, the mode or form of conveyance was held material, yet in later times, when the intent appears that the land shall pass, it has been held otherwise. *Cum quod ago non valet ut ago, valeat quantum valere potest. Gale* v. *Coburn,* 18 *Pick.* 397. 400. *Barrett* & ux. v. *French,* 1 *Conn. R.* 354. *Crossing* v. *Scudamore,* 1 *Vent.* 137. S. C. 1 *Mod.* 175. *Lade* v. *Baker* & al. 2 *Vent.* 149. *Doe* d. *Milbourne* & ux. v. *Simpson,* 2 *Wils.* 22. 2 *Inst.* 271. *Roe* d. *Wilkinson* v. *Tranmer,* 2 *Wils.* 75. 4 *Kent's Com.* 493. (3d ed.)

The objection, however, urged the most strenuously against the limitation of the use in this case to the widow, is, that the covenantor or grantor was not seised of any estate in the land when this covenant was made. It is said, that he had previously, by this deed, conveyed his whole estate, and of course the whole use thereof, to his daughter. An analogous objection is made to the exception in the deed viewed as a feoffment, on the ground that it is repugnant to the previous grant, and therefore void. These objections may be considered together. Viewed as a feoffment, it appears, that the quantity of estate conveyed to the daughter, is not ascertained or defined, as is sometimes done, by the *premises* or granting part of the deed ; in which case, there might be force in the objection ; but that it is limited and designated by the *habendum,* which succeeds the exception. The grant is subject to, and restricted by, the exception and *habendum.* In the grant, an estate during the widowhood of the grantor's wife, is excepted, and therefore does not pass by the grant. The *habendum* is exactly co-extensive with the grant, and does not profess to operate on what is thus excepted. The plaintiffs, therefore, do not take the estate during the wife's widowhood, either by the premises, or the *habendum ;* and there is no repugnancy between them. This constitutes also a perfect answer to the last objection to this deed as a covenant to stand seised. As the use in such a covenant is to be served out of the seisin of the covenantor, it is of course necessary that he should have such a seisin, when the use is created. *Sand. Us.* 109. He

being seised in fee, when this deed was made, and the use both to his wife and daughter being created by it, the question is, whether the use granted to the daughter first absorbed all his interest, and so left no estate remaining in him to serve the use limited to the wife. If it did not, it left in him an estate during his wife's widowhood, which is in law an estate for her life determinable by her marriage, and consequently, capable of a seisin for her use. 4 *Co*. 30. If, however, the use to the daughter were co-extensive with his estate, that, being the first use, would be executed by the statute; and although the daughter might take the whole estate in fee, for the use of the wife during her widowhood, such last use would not be executed, and therefore would vest no legal estate in the wife, but would at most remain a mere trust to be enforced only in chancery. *Cornish on Uses*, 41. 1 *Moor*, 46. *pl.* 138. 1 *Sand. Us.* 93. But as the use to the daughter, in this case, is limited solely by the *habendum*, and is only of the premises before granted, and those premises, on the construction already given to the deed, consist only of the land, *excepting thereout the use thereof during the wife's widowhood*, it follows, that that use did not pass to the daughter, but vested in the wife. This result is plainly according to the intention of the grantor, which was to give an estate to his wife during her widowhood, at the same time that he granted the residue to his daughter, and not to give to the latter an absolute and unqualified fee in the land for her own use, or the whole use first to his daughter, with a subsequent appointment to the use of his wife.

In whatever light, therefore, the deed in question is viewed, the plaintiffs failed to make out a title.

Without taking time to notice particularly the cases cited from the other states, a reference to them will show, that they fully sustain the conclusion to which we have come.

The superior court is, therefore, advised to grant a new trial.

In this opinion the other Judges concurred.

New trial to be granted.