The City of New Haven *vs.* George W. Hotchkiss.

Third Judicial District, New Haven, June Term, 1904.
Torrance, C. J., Hamersley, Hall and Prentice, Js.

A tract of land, desired by New Haven for a public park, was owned in common by *H* and *L*. Because of a " paint mine " therein, *H* demanded a price for the land which the city was unwilling to pay, denying the existence of such mine. By mutual agreement, therefore, *L* conveyed to the city his one-half interest in the land, without reservation, while *H's* deed contained the following clause: " reserving, however, to said *H*, but for a period not to exceed five years from the date hereof, the right to open a supposed paint mine on said land, and to work the same thereafter as a paint mine to its full extent, within the limits of the land herein conveyed;

New Haven v. Hotchkiss.

provided, however, that the grantee may at any time within six years from the date of this conveyance purchase and extinguish the right herein reserved, by paying therefor such sum as shall be agreed upon by three disinterested persons." Said deeds stated that the land was conveyed " solely for the purposes of a public park forever." In an action to determine the rights of the parties it was *held :* —

1. That the limitation of five years applied to the right to open the paint mine, and not to the right to work it after it had been opened.

2. That a continuous working of the mine until its exhaustion was not required.

3. That the failure of *H* to work the mine for several years was not necessarily and as matter of law an abandonment of his right.

4. That *H* took the exclusive mining right, which was rather in the nature of a reservation than an exception, since it gave him a greater interest than that which he had before possessed as tenant in common with *L*.

5. That such right was an estate in fee transmissible to his heirs.

6. That whether the clause quoted be called an exception, a reservation, or an agreement that *H* should have the specified mining right, it would nevertheless be effectual; since the city, although it did not execute the conveyance, became a party to the transaction by accepting the deeds and taking possession thereunder.

7. That the performance of the agreement by *H* was sufficient to take it out of the statute of frauds.

Argued June 10th—decided August 12th, 1904.

ACTION to determine the rights of the parties in and to certain land used by the city of New Haven as part of one of its public parks, brought to and tried by the Superior Court in New Haven County, *Case, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The following facts were found : The tract of land in question, containing about eleven and one-half acres, is situated in New Haven and forms a part of West Rock Park. Before it was conveyed to the town of New Haven in 1891 it was owned by William W. Hotchkiss and David D. Lambert, as tenants in common. Shortly before said land was conveyed to said town, the board of park commissioners of the city of New Haven entered into negotiations with the said William W. Hotchkiss for the purchase thereof. Said commissioners being unwilling to pay the price asked by

said Hotchkiss for a deposit of earth and mineral upon the land which said Hotchkiss claimed was a valuable "paint mine," an agreement, set forth in the deed afterwards given by Hotchkiss, was entered into, by which he was to have the right to open and work said mine. On January 26th, 1891, William W. Hotchkiss executed a warranty deed to the town of New Haven of "one undivided one-half part" of said tract, the stated consideration being "one dollar and other valuable considerations," which deed contained the following provision, immediately following the description of the land: "reserving, however, to said William W. Hotchkiss, but for a period of not to exceed five years from the date of this deed, the right to open a supposed paint mine on said land, and to work the same thereafter as a paint mine to its full extent, within the limits of the land herein conveyed; provided, however, that the town of New Haven may at any time within six years from the date of this conveyance purchase and extinguish the right herein reserved, by paying therefor such sum as shall be agreed upon by three disinterested persons." Said deed further stated that the premises were conveyed "solely for the purposes of a public park forever."

On the 27th day of January, 1891, said David B. Lambert executed a deed to the town of New Haven of "one undivided one-half part" of said tract. The language of this deed was the same as that of William W. Hotchkiss, excepting that it contained no reservation of any right to open or work said paint mine, nor any provision concerning such mine or reference to it.

Both of said deeds were delivered to the park commissioners by said William W. Hotchkiss. The consideration for them was paid to him, and the negotiations for the purchase of said property by the park commissioners were with him, and not with said Lambert.

The town and city governments of New Haven were consolidated in December, 1897.

In the spring of 1895, said William W. Hotchkiss and his son George W. Hotchkiss, the defendant, formed a partner-

ship for opening and working said paint mine, and in pursuance thereof " did open and work said paint mine." During the spring of 1895 they set up machinery for grinding and preparing the paint, and removed from the mine and prepared for the market about two hundred barrels of the paint material.

The defendant was engaged in selling the paint made from such material until his father died in November, 1896, when the paint remaining, and also said machinery, were sold as a part of the estate of said William W. Hotchkiss.

The only persons interested in the settlement of said estate were the defendant and the widow of William W. Hotchkiss. They divided the estate between them by agreement, but no division or distribution of the paint mine was made.

It was necessary to thoroughly test said paint as to its durability before any extensive market could be found for it. It has been so tested during the past eight years, and seems to be of good quality and marketable, and said mine is valuable.

After the spring of 1895 no work was done at said mine until April, 1903, when the defendant entered upon the land and began taking materials from said mine, and was in May, 1903, restrained by the temporary injunction issued in this action.

No steps have been taken by either the town or city of New Haven to purchase the right to open and work said mine, as provided in said deed.

Upon these facts the plaintiff claimed in the trial court, that the language of the deed of William W. Hotchkiss created in him no estate in the land, but only a right to acquire such estate; that the acts of William W. Hotchkiss in removing materials from the mine in 1895 were not sufficient to legally create or confirm in him a right or estate which survived the five year period named in his deed; that the omission to work the mine, as stated in the finding, was in law such failure to maintain title, or such an abandonment of any existing right, as justified the plaintiff at the

end of six years from the delivery of the deed in asserting exclusive ownership; and that the defendant had no interest in said mine or said land.

The trial court ruled that the provision in the deed of William W. Hotchkiss was an exception. The judgment-file states that the issues were found for the defendant; that it is adjudged that the defendant is the owner of the paint mine, except for any dower interest in his mother; that the defendant and his mother, and their heirs and assigns, have the right to work said mine, etc., and that the temporary injunction is dissolved.

*Leonard M. Daggett*, for the appellant (plaintiff).

*Henry G. Newton* and *Harrison Hewitt*, for the appellee (defendant).

HALL, J. The purpose of this action is to ascertain whether the defendant has a right to enter upon certain land now forming a part of West Rock Park in the city of New Haven, and to work a mine thereon by taking from it earth and minerals to be used in the manufacture of paint. The existence and character of such claimed right must be determined by the language of the Hotchkiss deed, read in the light of the circumstances stated in the finding, and by the acts of the parties in acquiring and maintaining the rights and interests provided or granted by said deed.

From the fact that the town was given the privilege of purchasing the reserved right within six years, it is apparent that the limitation of five years applied to the right to open the mine and not to the right to work it after it had been opened.

What was required to be done in order to open the "supposed paint mine" the deed does not state. The trial court has found as a fact that William W. Hotchkiss and his son, the defendant, opened and worked the mine in the spring of 1895, and there is nothing in the finding showing that such conclusion was erroneous.

In rendering judgment for the defendant the trial court held that the failure from 1895 until 1903 to work the mine after it had been opened, did not constitute an abandonment, as claimed by the plaintiff, of the right reserved to Hotchkiss by the deed. Whether the right was so abandoned was mainly a question of fact. The deed did not require a continuous working of the mine until it should be exhausted. Upon the facts showing the reason of such failure to work the mine, we cannot say that as a matter of law it worked an abandonment of the Hotchkiss right, or that it justified the plaintiff in assuming, in January, 1897, that such right had been abandoned.

The right reserved in the Hotchkiss deed is an interest in the land, but it is an incorporeal right. "Instruments which only give a right or privilege of entering upon land for the purpose of mining and removing the minerals therefrom, are held to convey no title to or property in the minerals themselves while in the ground, and to create no greater interest in land, even though that interest be real estate, than an incorporeal right to mine, with a title in the minerals after they have been removed by the grantee." *Sanford's Appeal*, 75 Conn. 590, 595; Washburn on Easements & Servitudes (3d Ed.), p. 15. In so far as the provision in question gave to William W. Hotchkiss the exclusive right to open and work the mine, and to acquire a full title to the mineral removed, it partook rather of the nature of a reservation than of an exception, since such right was greater than that which he had before possessed as a tenant in common with Lambert. *Knowlton* v. *New York, N. H. & H. R. Co.*, 72 Conn. 188, 192. That it was intended by the parties to both deeds that Hotchkiss should have the exclusive right, and not merely a right in common with the grantee or some other cotenant to so open and work the mine, seems clear from the language of the Hotchkiss deed considered in connection with the Lambert deed, and the circumstances under which both deeds were given. Upon the execution of the two deeds William W. Hotchkiss was the only person who could exercise the right to open and

work the mine. By the terms of both deeds the town, so long as it owned the land, could only use it for the purposes of a park, and Lambert had conveyed away his entire interest in the property. One of the allegations of the answer, found true by the court in finding the issues for the defendant, is that Lambert delivered his deed to Hotchkiss to be delivered by him to the town, provided an arrangement acceptable to Hotchkiss should be made by the town; and that a part of the real consideration of the Lambert deed, as well as of the Hotchkiss deed, was that Hotchkiss should have the right to open the mine and work it to its full extent, unless such right should be purchased by the town, as provided in the Hotchkiss deed. While the Hotchkiss deed conveyed to the town an undivided one-half interest in the described land, it reserved to Hotchkiss the right to work to its full extent, within the limits of that land, the mine which he might open on it within the period named.

That the trial court held the provision in question in the Hotchkiss deed created an exception rather than a reservation, does not render the judgment erroneous, if it appears from the language of the deed and facts found that it was intended by the parties to the deed that Hotchkiss should have the exclusive right to open and work the mine, and also appears that the defendant is now entitled to exercise that right.

The language of the reservation, considered in connection with such facts, shows an agreement between the town and William W. Hotchkiss that he should have such exclusive right as a part consideration of his deed to the town and of his delivery of the Lambert deed. Although the written agreement was not signed by the town, the town became a party to it by accepting the deed, and taking possession of and using the land conveyed by the deeds. The performance of the agreement by Hotchkiss was sufficient to take it out of the statute of frauds, and whether we call this provision an exception or a reservation, or an agreement that Hotchkiss should have a certain property right in the land conveyed, William W. Hotchkiss was entitled to have

the right described in such provision. *Randall* v. *Latham*, 36 Conn. 48, 52 ; *Foster* v. *Atwater*, 42 id. 244, 254.

. The right described in the reservation is property in which an estate in fee may be granted. *Quinebaug Reservoir Co.* v. *Union*, 73 Conn. 294, 297.

When such a right is created by a reservation in a deed, an estate of inheritance may be created without the use of the word " heirs " ; and whether such an estate is created by a reservation without words of limitation " is to be determined from the language employed, read in the light of the surrounding circumstances." *Knowlton* v. *New York, N. H. & H. R. Co.*, 72 Conn. 188, 192 ; *Chappell* v. *New York, N. H. & H. R. Co.*, 62 id. 195, 203.

From the language of the reservation and the surrounding circumstances, we think it was intended by the parties that Hotchkiss upon opening the mine within the time limited, and upon finding the product valuable, should have not merely a personal privilege to work the mine during his life, but an absolute ownership of the mining right, and of the product of the mine, subject to the right of the town to purchase in the manner provided. It was at first proposed that the town, in purchasing the property, should pay to Hotchkiss the value of the mine, and the reservation was made in the deed because the park commissioners were unwilling to purchase the mine at the price asked by Hotchkiss. Evidently the commissioners questioned the existence of the mine described as " a supposed mine," and it was in effect provided by the reservation that the city might purchase it after its existence had been proved by opening it. The property rights described in the reservation are the right to open the mine, and the right to work it thereafter. The former was to continue for five years after the date of the deed, and the latter to the " full extent " of the mine " within the limits of the land conveyed," after the mine had been so opened. The reservation describes the time when and the manner in which these rights are to be terminated. The right to open the mine was to end at the expiration of the period of five years, The right to work the

mine after it had been so opened was to be terminated by the purchase of such right by the town within six years, and in the absence of such purchase was to terminate when the mine should be exhausted. Upon the facts before us we think that practically the same effect should be given to this reservation as would have been given to an exception of such rights to open and work the mine in a deed by William W. Hotchkiss of the entire land conveyed, had he been the sole owner of it. The right in the land, created by the reservation, is an estate of inheritance.

There is no error.

In this opinion the other judges concurred.