THE TOWN OF FARMINGTON *vs.* ANNIE RILEY ET ALS.

First Judicial District, Hartford, January Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

No technical words are necessary in a deed to create either a reservation or an exception. The law looks through the form of expression to the substance of the thing expressed, and gives effect to the intent of the parties.

In 1800 the town of Farmington conveyed a part of the common land lying within the limits of an ancient highway, and within the First Society, by deed containing, among other provisions, the following: "reserving, also, the privilege for the town, society, or any individual to dig and carry away any quantity of sand or gravel from the easterly side of the hill, beginning near the foot of it, and from other places where it has been dug heretofore, and extending from thence as shall be necessary, until the whole hill is taken away should it ever be wanted." *Held:*—

1. That the apparent and controlling purpose of the parties was to secure the dedication and devotion of the sand and gravel, of which the hill was composed, to the use and benefit of the local public and of its individual members, for so long a time as the material might last.

2. That the original grantee and his assigns took no other or greater right to use the sand and gravel than such as they, as individual members of the local public, might have in common with other residents of the town; and therefore that they could not sell and convey the material for commercial purposes, as they had undertaken to do, and thus turn what was designed for an enduring community benefit into a source of financial profit for themselves.

3. That in reaching this conclusion it was unnecessary to determine whether the clause in question imported into the deed an exception of some portion of the premises, the grantor then remaining owner of a corporeal hereditament, or a reservation of a mere right or

privilege to be exercised upon the land conveyed, an incorporeal hereditament in the nature of a *profit a prendre*.

Provisions authorizing the removal of any quantity of material upon or under ground until it should be entirely taken away, have generally been construed as contemplating an exclusive use, and as granting title to the material where it lay.

Claims presented for the first time in the brief are not entitled to consideration by this court.

Argued January 8th—decided March 5th, 1914.

SUIT to restrain the defendants from removing sand and gravel from Round Hill, so-called, in the plaintiff town, brought to and tried by the Superior Court in Hartford County, *Holcomb, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant Riley. *No error.*

Round Hill is a small hill in the town of Farmington, consisting of sand and gravel of superior quality and specially adapted for building purposes, concrete work, and the construction and repair of highways. There is no other known considerable deposit of sand or gravel in the town, or one of equal quality and so easily accessible. The hill was highest toward the north and east. In these directions the sides were abrupt. Toward the west the hill sloped gradually away. The high portion on the north and east sides covered about six acres, and forms the tract now in controversy.

Prior to 1800 this hill and a few adjoining acres formed a part of the common land lying within an ancient highway of the town and within the First Society. At a meeting held December 27th, 1784, the inhabitants of the town had appointed a committee to locate by metes and bounds such parts of the highways in the town as were not necessary for public use, and authorized this committee, the location made having been approved by the selectmen, to sell and dispose of the lands so located. April 2d, 1800, this committee, acting on behalf of the

town under this authority, sold to one Gleason said six acres. The deed contained the following description and reservations: "One piece or parcel of land situate in said Society it being the whole of the Round Hill in the great meadow except what has been heretofore sold; reserving three rods in width on the Southerly side of said hill for a highway where it now runs; Reserving likewise a passage of convenient width for teams on the easterly side of said hill—Reserving also the privilege for the town, Society or any individual to dig and carry away any quantity of sand or gravel from the easterly side of the hill, beginning near the foot of it, and from other places where it has been dug heretofore, and extending from thence as shall be necessary, until the whole hill is taken away should it ever be wanted."

The sand and gravel in the hill were necessary for public use by the town and its inhabitants and were so considered.

Mrs. Riley, one of the defendants, is the successor in title of Gleason. Her title was acquired by her through the will of her husband. The deed to him contained the following provision: "The right of the Town and of individuals to dig and carry away any quantity of sand and gravel from the easterly side of said hill, beginning near the foot is hereby reserved, for particulars regarding said right reference may be had to deed given by Town Committee to Ebenezer S. Gleason April 2, 1800, recorded," etc.

From the time of the deed to Gleason down to the present time, the town and its inhabitants have obtained at will, and without compensation, sand and gravel from the easterly and southeasterly side of the hill for building purposes and for the construction and repair of highways.

Between the years 1820 and 1830 a highway, being the main highway between the villages of Farmington and

Unionville, was laid out and constructed along the northerly side of the hill, and a sand pit was opened on that side within the limits of the premises in question. Since this highway was constructed the town and its inhabitants have taken sand and gravel at will, and without compensation, from the north side of the hill. Practically all the sand and gravel used in the town by its inhabitants for building purposes, and by the town in the construction and repair of highways, since 1800, has been obtained from one or the other of these two sides of the hill.

After the construction of the highway on the north side of the hill some residents of the town of West Hartford took sand from the north side of it, and removed the same to the town of West Hartford, paying the then owner of the hill compensation therefor.

About the year 1900 a street railway was constructed along the highway on the north side of the hill. At that time a spur track was laid therefrom into the pit on the north side of the hill, and considerable quantities of sand and gravel were taken therefrom for use in the construction of the street railway. Some of this material was used outside the limits of the town, and it was in evidence that compensation was paid to the owner of the land for some of this material. It did not appear that the officials of the town of Farmington had any knowledge of these payments.

At the time of the beginning of the acts of the defendant Pierson, hereinafter recited, about one and one half acres of the hill on the easterly side and about three fourths of an acre on the northerly side had been removed in the ways stated.

The town has immediate use for a large quantity of the sand and gravel remaining in the hill for use upon its highways, and eventually will need the whole of it. This latter need, however, is for the occasional use of

said material from time to time and not for the immediate removal of all of it.

March 22d, 1912, the defendant Mrs. Riley entered into a contract with the defendant Sternberg, his heirs, administrators and assigns, purporting to give to him, for a consideration named, the right to remove material from said hill for the term of five years. Sternberg assigned his rights under the contract to the defendant Pierson. Neither Sternberg nor Pierson is a resident or inhabitant of Farmington.

Pierson placed a steam excavating apparatus upon the northerly side of the hill adjoining the highway, and commenced to remove the sand and gravel therefrom, carrying the same in cars over the street-railway tracks outside of the town for use there. He had thus removed between two and three thousand cubic yards when the temporary injunction issued in this action was served upon him. The apparatus so installed is capable of removing all that remains of the hill, about three hundred thousand cubic yards, in three years or less.

Pierson claims the right to excavate and remove, and dispose of as he pleases, as much of the material remaining as he may desire, and the defendant Mrs. Riley claims the right to sell the same to him or any other person, and to authorize its removal at her pleasure.

*Francis W. Cole* and *Francis E. Jones*, for the appellant (defendant Riley).

*James E. Cooper* and *John H. Kirkham*, with whom was *George E. Taft*, for the appellee (plaintiff).

PRENTICE, C. J. There are several questions presented by this record to which counsel upon argument have devoted a measure of attention, which, under the conditions presented to us, do not call for our answer.

It is, for instance, wholly immaterial whether or not the word "reserving," as used in the deed of the town to Gleason in connection with the privilege of digging and removing gravel and sand from the described premises, was the strictly correct one to use there. The words "reserve" and "reserving" and "except" and "excepting" are frequently used inartificially and interchangeably. The law, however, looks beyond the form of expression to the substance of the thing expressed, and gives effect to the intent of the parties thus discovered. No technical words are necessary in order to create either a reservation or an exception. *Bryan* v. *Bradley*, 16 Conn. 474, 482; *Barnes* v. *Burt,* 38 Conn. 541; *New Haven* v. *Hotchkiss*, 77 Conn. 168, 174, 58 Atl. 753.

It is also unnecessary for us to determine whether the so-called reservation clause in fact imported into the deed an exception of some portion of the premises from the grant, the grantor then remaining the owner of a corporeal hereditament, or a reservation of a mere right or privilege to be exercised upon the land conveyed,—an incorporeal hereditament in the nature of a *profit a prendre*. If the former, Mrs. Riley certainly has no cause for complaint; if the latter, she has none unless the plaintiff has, to the diminution of her right, been protected in the exercise of a larger right than it reserved.

It is equally unnecessary to inquire whether or not the reservation clause in the deed was sufficient to give to the individual members of the local public, other than Gleason and his successors in title, any beneficial right or interest. The judgment appealed from neither recognizes such right or interest, nor is predicated in any way upon such recognition.

As Mrs. Riley is not restrained in her enjoyment of the material of the hill for her personal use, and as the reservation attempted to be made in favor of individuals is palpably limited to such use, we are not here con-

cerned with any aspect of the situation which arises from the provision in favor of individuals. If Mrs. Riley has any grievance, it must arise from some other source. The judgment complained of does nothing more than restrain her from selling or removing, or aiding in the removal, of sand and gravel from the hill in so far as she has no need of it for her personal use. It does not forbid her appropriating the material from time to time for such use to the extent of her needs. She can have no cause of complaint, therefore, unless she has some larger right than that thus accorded to her.

Beyond question the effect of the deed was to retain in the grantor some right or privilege to be exercised upon the premises described in the instrument, or a title to some portion of them. Whatever the right, privilege, or title was, the law will protect it, and the appellant cannot complain of the judgment if it does no more. The controlling question, therefore, is, did the deed, whether by force of an exception or of a reservation, leave the grantor town in the enjoyment of the right to dig and carry away the sand and gravel of the hill as its needs might from time to time require, and without limitation of time, save only so much of it as the land-owner might need for personal use.

The answer to this question must be found in the language of the deed read in the light of the surrounding circumstances. *Bryan* v. *Bradley*, 16 Conn. 474, 482. A most significant feature of the reservation clause is that the town was authorized to take and carry away any quantity of the material needed until the whole hill should be removed. Provisions of this character relating to material upon or under the ground have been construed as contemplating an exclusive use, and thus in effect conveying or retaining title to the material where it lay. *Caldwell* v. *Fulton*, 31 Pa. St. 475, 478; *Gloninger* v. *Franklin Coal Co.*, 55 Pa. St. 9, 11; *Sanderson* v.

*Scranton*, 105 Pa. St. 469, 473; *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 322.

We have no occasion to go to that length. But the language of the instrument is certainly indicative of an intent to retain in the town something far more substantial and enduring than the mere privilege of entering and taking away any material from the premises which should chance to remain unappropriated by others under the landowner's authority. Plainly it was not contemplated that the rights of the general landowner should be paramount. It was, of course, intended that he should have the right to remove such of the material as he might need for personal use. But the plain indications are that it was intended that his rights should not extend beyond this privilege, and that beyond it the rights of the community and its members should be paramount. The deed contains no suggestion of any right in the grantee and his assigns to appropriate the stone and gravel except such as they, as individual members of the local public, might have in common with everybody else. It is apparent that the parties in framing the reservation clause intended that the hill should supply the needs, both public and private, of the community, and scarcely less apparent that it was in contemplation that this service should continue for a long period of years. Apparently it was even a matter of conjecture whether or not the time would ever come when the resources of the hill would become exhausted in supplying the demands permitted to be made upon it. The provisions of the clause in question were formulated with palpable reference to community service and the long continuance of such service. Careful regulation was made of the manner in which the material was to be removed as wanted. Haphazard, disorderly, or wasteful removal was not permitted. The controlling purpose of the parties, whether made effective or not, ap-

pears to have been to secure the dedication and devotion of the useful material of which the hill was composed to the use and benefit of the local public and of its individual members for so long a time as might be. It is difficult to believe that it was in contemplation that the grantee in the deed and his successors in title should take such a right or title as would enable them by the simplest and most apparent means to defeat the underlying purpose of the parties, and turn what was designed for an enduring community benefit into a source of financial profit for themselves. We are of the opinion that it was the intent of the parties that Gleason, the grantee, and his assigns should acquire no greater right to the use of the material of the hill than that which the judgment below accorded to Mrs. Riley, and that the conveyance to Gleason secured to him and them no greater right.

The appellant's brief presents a claim that the plaintiff can have no right or interest in the premises whatsoever, since they were, when conveyed, located within highway limits, and that, therefore, no title to or interest in them which it could either convey or preserve to itself was vested in the town. This claim was not made below, and error is not predicated upon it in the appeal. Presumably the finding was made without reference to it. The appellant is not entitled to its consideration by us, and we should not under the circumstances be justified in considering it. *Banks* v. *Warner*, 85 Conn. 613, 617, 84 Atl. 325.

There is no error.

In this opinion the other judges concurred.