JESSE S. MILLER *vs.* THE STATE OF CONNECTICUT.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

44

Argued December 4th, 1935—decided January 8th, 1936.

*Cyril Coleman,* for the appellant (plaintiff).

*Harry L. Brooks,* Assistant Attorney General, with whom, on the brief, was *Edward J. Daly,* Attorney General, for the appellee (defendant).

AVERY, J. In 1933, the Legislature passed a bill which was duly approved by the Governor (Special Acts, 1933, p. 998) authorizing Jesse S. Miller to bring

suit against the State for the purpose of having decided certain disputed claims between him and the State in regard to certain rock rights described in a deed from Joseph Hallberg to John G. Murphy, dated January 12th, 1889, and recorded in the East Hampton land records. The present suit was brought by the plaintiff under the authority of this act.

The pertinent facts found by the court are as follows: On January 12th, 1889, Joseph Hallberg, the owner of a farm of one hundred and thirty acres more or less in the town of Chatham (now East Hampton) gave to John G. Murphy, his heirs and assigns a quitclaim deed of a certain described piece of land in Chatham, containing one hundred and sixty acres more or less, containing the following clause: "The intent and purpose of this deed being to convey to the said Grantee, all the rock rights and privileges on and in said land and also a right of way over all parts of said land for the purpose of quarrying, blasting, removing, hauling or otherwise working said rocks in such manner as the said Grantee may deem best but the fee in said land is to remain in me, the said Releasor, subject to said rights and encumbrances." The instrument was witnessed and acknowledge as are deeds of land and recorded in the land records of East Hampton January 24th, 1889. On July 12th, 1889, Murphy quitclaimed his interest in the premises to Calvin A. Stevens by a deed which was duly recorded July 18th, 1889. On June 19th, 1924, Stevens' interest was distributed to his heirs by an instrument recorded April 3d, 1925. In February and September, 1930, the interest of these heirs was conveyed to the plaintiff by two deeds recorded May 9th, 1932.

Meanwhile, by a quitclaim deed, dated September 15th, 1915, and recorded September 22d, 1915, in the Chatham land records, Joseph Hallberg conveyed the

farm to the State of Connecticut. The habendum clause of this deed reads: "To Have and To Hold the premises with all their appurtenances." The premises so conveyed became a part of Hurd Park under the control of the state park and forest commission, and it was from that time owned, held and used by the State for public use and visited annually by thousands of persons; and the plaintiff had means of notice that the State used all the land as a state park for more than fifteen years prior to the recording of the plaintiff's deed to the rock rights mentioned. The appellant has requested certain additions and corrections to the finding but no change can be made whereby the position of the appellant will be materially advantaged.

The trial court concluded that the rights conveyed by Hallberg to Murphy by the deed of January 12th, 1889, gave no title to the minerals or rocks in or on the land but that the rights were limited to the privilege of quarrying, blasting, removing, hauling or otherwise working the rocks and minerals, but the rocks and minerals not having been removed and having remained in place were part of the fee; that no entry having been made upon the land for forty-five years and no use of the right of way having been made for a period of twenty-five years, and the State having been in possession of the premises for more than the period of limitation and its possession having been open, notorious, adverse, hostile and exclusive as against the plaintiff and all other parties, there was an abandonment of any rights which the plaintiff and his predecessors in title had to quarry and remove the rocks upon the property. The ultimate question involved in this appeal is the correctness of these conclusions of the trial court.

"The owner of land may give to another a right to extract minerals from the land for a period of time or

in perpetuity, the person to whom the right is given having no interest in the minerals until they are extracted." 1 Tiffany, Real Property (2d Ed.) § 254; *State* v. *Roden Coal Co.*, 197 Ala. 407, 412, 73 So. 5; *Genet* v. *Delaware & Hudson Canal Co.*, 136 N. Y. 593, 603, 32 N.E. 1078, 19 L.R.A. 127; *Harvey Coal & Coke Co.* v. *Dillon*, 59 W. Va. 605, 53 S.E. 928, 6 L.R.A. (N.S.) 628, 636, 637; *Wolfe* v. *Beckett*, 127 Ky. 252, 105 S.W. 447, 17 L.R.A. (N.S.) 688, 693; *Coolbaugh* v. *Lehigh & Wilkes-Barre Coal Co.*, 213 Pa. St. 28, 62 Atl. 94, 4 L.R.A. (N.S.) 207. In *Sanford's Appeal*, 75 Conn. 590, 593, 594, 595, 54 Atl. 739, we said: "The owner of land may therefore convey the surface or soil in fee, reserving or excepting an estate in the minerals, or a right to mine them; he may convey an estate in fee in the minerals separate from the soil; or, while retaining in himself the property in the minerals until removed and in possession of the grantee, he may either grant the privilege or right to mine for them, or may lease for a term of years the land itself together with the privilege of mining during the term. . . . The instruments by which these several estates or interests in minerals are created are frequently, without distinction, called mining leases, and the numerous decisions as to the respective titles conveyed by them are not entirely harmonious. Their legal effect is to be determined not so much by the name given to them, or the technical terms employed in them, as by ascertaining from the entire language of each instrument the real intention of the parties, by applying to it the ordinary rules governing the construction of written conveyances. . . . Instruments which only give a right or privilege of entering upon land for the purpose of mining and removing the minerals therefrom, are held to convey no title to or property in the minerals themselves while in the ground,

and to create no greater interest in land, even though that interest be real estate, than an incorporeal right to mine, with a title in the minerals after they have been removed by the grantee." This principle was followed in *New Haven* v. *Hotchkiss,* 77 Conn. 168, 173, 58 Atl. 753.

Whether in a given case the conveyance is to be regarded as creating a fee in the minerals under the surface or as simply an incorporeal hereditament entitling the grantee to mine and remove them and to give no right in them until mined is to be determined not so much from the form of the instrument as by the intention of the parties as disclosed by the instrument of conveyance read in the light of the surrounding circumstances. *Farmington* v. *Riley,* 88 Conn. 51, 57, 89 Atl. 900. In the present case, the deed from Hallberg to Murphy speaks of the property conveyed as the "rock rights and privileges on and in said land" and a right of way for the purpose of quarrying and removing the rocks, but it specifically reserves the fee which is "to remain in me, the said Releasor, subject to said rights and encumbrances." The rocks "on and in" the land were part of the realty until severed and by retaining the fee the grantor plainly intended to convey to Murphy nothing more than a right to enter upon the property and to quarry and remove the rocks with no intention of giving title to the rocks themselves, whether upon the surface or beneath it, until quarried. The instrument, therefore, did not give to Murphy an estate in fee in the minerals as distinguished from the surface soil; it was, as described, an "encumbrance" or a mere incorporeal hereditament. Such a right may be lost by abandonment. *Peck* v. *Lee,* 110 Conn. 374, 378, 148 Atl. 133.

In the trial court and here, the appellant claims that the issue of abandonment was not raised by the plead-

ings. In the answer of the State, in a special defense, it was alleged in substance among other things that any right of the plaintiff or his predecessors in title in the property had "long since ceased and terminated." The answer fairly asserted that if the plaintiff or his predecessors in title ever had any rights, they had been relinquished and abandoned. The denial of these allegations of the special defense by the plaintiff in a reply, raised the issue of abandonment and the claim of variance is not sustained.

In this jurisdiction, abandonment is a question of fact. *Richardson* v. *Tumbridge,* 111 Conn. 90, 93, 149 Atl. 241; *New London* v. *Pequot Point Beach Co.,* 112 Conn. 340, 347, 152 Atl. 136. Lapse of time and nonuser are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances; *Derby* v. *Alling,* 40 Conn. 410, 436; *New York, N. H. & H. R. Co.* v. *Cella,* 88 Conn. 515, 522, 91 Atl. 972; and, if united with an adverse user of the servient estate inconsistent with the existence of the easement, may extinguish it. *New York, N. H. & H. R. Co.* v. *Cella,* 86 Conn. 275, 279, 85 Atl. 521. By ouster is not meant a physical eviction, but a possession attended by such circumstances as to evince a claim of exclusive right and title, and a denial of the right of the other tenants to participate in the profits. *Lucas* v. *Crofoot,* 95 Conn. 619, 624, 112 Atl. 165. It is enough if the disseizor enters into and holds possession of the land as if it was his own. *Johnson* v. *Gorham,* 38 Conn. 513, 521; *Searles* v. *DeLadson,* 81 Conn. 133, 136, 70 Atl. 589; *Quigg* v. *Zeugin,* 82 Conn. 437, 440, 74 Atl. 753. The fact that no entry upon the land had been made by the plaintiff or his predecessors in title for forty-five years and that the State for more than fifteen years had been in open and continuous control and posses-

sion, furnishes sufficient basis for the finding of the trial court that whatever rights the plaintiff and his predecessors in title had to the rocks by virtue of the deed from Hallberg to Murphy have been abandoned and that the plaintiff has no interest in the premises

There is no error.

In this opinion the other judges concurred.