**In re Gene Thomas PRUITTE, and Debra Joyce Eckman Pruitte, Debtors.**

**Bankruptcy No. 93–40059–399.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Aug. 16, 1993.

---

5. By separate Order, the Court has denied the application to hire Mr. Bell.

T.J. Mullin, Clayton, MO, for Debtor.

Joseph P. Cunningham, III, Crystal City, MO, for Commerce Bank.

John V. LaBarge, Jr., St. Louis, MO, Chapter 13 trustee.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This case arises from a secured creditor's objection to confirmation of Debtors' Chapter 13 plan. The objection raises two issues:

1. Does the creditor's deed of trust create a security interest in any property in addition to the Debtor's residential real estate thereby making the provisions of § 1322(b)(2) inapplicable?

2. Assuming § 1322(b)(2) applies, is the Debtor's proposal to make mortgage payments over the life of the plan an impermissible modification under § 1322(b)(2) where the debt fully matured by its terms pre-petition?

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(L).

### FACTS

Commerce Bank of St. Louis, N.A. (the "Bank" or "Commerce") is a secured creditor of Gene and Debra Pruitte, the Debtors, (the "Debtors") under a note secured by a deed of trust on the Debtors' principal residence (the "Note" and the "Deed of Trust"). The Debtors were originally obligated to the Bank under a 20 year note; however, in November of 1991, Debtors signed a modification agreement with the Bank, providing that the Note would mature and be payable in full on October 1, 1992. Under the Note as modified, Debtors paid interest on the outstanding balance at a rate of 10.5 percent. When the Note matured on October 1, 1992, Debtors were unable to pay the balance in full. The Bank commenced foreclosure proceedings, and on January 7, 1993, Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code 11 U.S.C. § 101 et seq. (1988).

In their Chapter 13 Plan, Debtors propose to pay the entire balance due under the Note over 60 months with interest at rate of 11 per cent. The Bank has objected to confirmation of Debtors' plan, asserting that the plan impermissibly modifies the Bank's rights under its Note in violation of § 1322(b)(2). Because the Note matured by its own terms pre-petition the Bank asserts that it is entitled to immediate payment of the entire outstanding balance and that any other repayment arrangement impermissibly modifies the Bank's rights.

Debtors defend their treatment of the Bank under their plan by asserting that the Bank is secured by property other than the Debtors' principal residence thereby making the provisions of § 1322(b)(2) inapplicable. Alternatively, Debtors assert their plan does not modify the Bank's rights but simply cures the default under the note pursuant to § 1322(b)(3) and pays the Bank's claim in full with interest over the life of the plan.

The Deed of Trust securing the Bank's Note describes a parcel of realty which is the Debtors' principal residence. In addition to the described real estate, however,

the Deed of Trust also contains the following language:

> Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Debtor relies on this language for its position that the Bank is *not* a creditor whose claim is secured *only* by a security interest in real property that is the debtor's principal residence, and therefore the Debtors contend their plan may modify the Bank's right to payment.

### DISCUSSION

1. *Is Commerce's Note Secured only by Debtors' Principal Residence?*

The first issue before this Court is whether the language quoted above removes the Bank's claim from the protection of § 1322(b)(2) which states:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> (2) modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence** ...

11 U.S.C. 1322(b)(2) (emphasis added).

Although some courts have held that an interest in "easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures ..." constitutes additional security for purposes of § 1322(b)(2), *Secor Bank, Fed. Sav. Bank v. Dunlap*, 129 B.R. 463, 465 (E.D.La.1991); *In re Reeves*, 65 B.R. 898, 901 (N.D.Ill. 1986), other Courts have held that similar language does not create "additional" security which would preclude the application of § 1322(b)(2). *In re Ross*, 107 B.R. 759, 762 (Bankr.W.D.Okla.1989); *In re Jackson*, 136 B.R. 797, 801 (Bankr.N.D.Ill.1992)

(holding that purchase money mortgage secured by "rents, issues and profits thereof and all apparatus and fixtures of every kind for the purpose of supplying or distributing heat, light, water or power, and all plumbing or other fixtures" does not create an additional security interest); *In re Hougland*, 93 B.R. 718, 720 (D.Ore.1988) *aff'd* 886 F.2d 1182 (9th Cir.1989) (holding that an interest in "rents, profits, and issues" without more is insufficient to remove mortgagee from the protections of § 1322(b)(2)). This Court joins the latter authorities in holding that the boiler plate language in Commerce's Deed of Trust does not constitute additional security for its claim. Section 1322(b)(2) was designed to provide greater protection to home mortgage lenders. *Reeves*, 65 B.R. at 899. Citing from *In re Glenn*, 760 F.2d 1428, 1433, 1434 (6th Cir.1985) *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), *Reeves* reviewed the legislative history of § 1322(b)(2) and noted that:

> the preferred status granted some creditors under section 1322(b)(2) was limited to holders of claims secured only by a security interest in the debtor's principal residence. No preferential treatment was given debts secured by property in addition to the debtor's principal residence. Such debts normally are incurred to make consumer purchases unrelated to the home or to enable the debtor to engage in some form of business adventure. **In such circumstances the home is mortgaged not for its own sake but for other purposes,** and often is only one of several forms of security given.

*Glenn*, 760 F.2d at 1434 (emphasis added).

In the instant case, the Debtors' home was mortgaged to secure a purchase money loan on the residence. The boilerplate language granting Commerce an interest in easements, rights, appurtenances and the like merely gives Commerce security in the realty and in those interests which "automatically flow from the mortgage on the Debtor's principal residence as an incident of ownership." *Jackson,* 136 B.R. at 803 (holding that an assignment of rents removes a mortgage from the protection of

§ 1322(b)(2) because the assignment does not flow automatically as an incident of ownership of the realty). It is consistent with the intended scope of § 1322(b)(2) that Commerce's rights under its Note receive the protection of § 1322(b)(2) and that Commerce's rights not be modified.

2. *Does Debtors' Plan Impermissibly Modify Commerce's Rights*

 Debtors contend their plan does not modify the Bank's rights because the plan proposes to cure the default and pay the Bank in full with interest over five years. Initially, the Court notes that § 1322(b)(3) allows a debtor to cure defaults only on claims on which the last payment is due after the date on which the final payment under the plan is due. Here, Debtors' Note matured prepetition and the entire outstanding balance became due and payable on October 1, 1992, approximately two months prior to the filing of Debtors' petition for relief. Thus, Debtors may not use the cure provision of 1322(b)(5) to rewrite Commerce's Note.

 Debtors alternatively assert that the plan treatment of the Bank's claim is not a modification of the Bank's rights because the economic consequences to the Bank are the same whether the Bank receives immediate payment in full or payment over the life of the plan with interest. Indeed, Debtors believe their plan offers a better "deal" for the bank in that the plan proposes 11% interest on the outstanding balance while the Note as modified provided only 10.5 per cent.

This Court is not willing to review this matter based upon the relative economic benefits afforded Commerce under the plan when the Bankruptcy Code is clear that a Chapter 13 plan may not modify the rights of such a creditor. Debtors' proposal to "cure" their mortgage debt which matured pre-petition is an attempt to create a new payment schedule which clearly modifies the rights of Commerce as mortgagee. *In re Baxter*, 155 B.R. 285, 288 (Bankr. E.D.Mass.1993); *In re Maloney*, 36 B.R. 876, 878 (Bankr.D.N.H.1984). Modification of a secured creditor's rights under § 1322(b)(2) may be likened to the concept of impairment under § 1124. Under § 1124(1) a claim is impaired unless the plan leaves unaltered the legal, equitable and contractual rights to which the holder of such claim is entitled. In the instant case, Commerce is entitled to proceed with its rights under its Note and Deed of Trust. By permitting the Debtors to rewrite or extend their loan with Commerce, they inevitably alter Commerce's legal, equitable and contractual rights. In the Chapter 11 context, Commerce would be impaired. In the Chapter 13 context, Commerce's rights are modified.

If a debtor has the option of paying off a mortgage obligation which matured pre-petition, under a Chapter 13 plan, without regard to the terms of that mortgage, whatever protection had been intended in § 1322(b)(2) for the mortgagee would lost. *In re Harris*, 147 B.R. 17, 19–20 (Bankr. N.D.Ohio 1992). Accordingly, as appropriately noted by Judge Koger of the Western District of Missouri when addressing this issue: "it sometimes becomes the unhappy lot of a Bankruptcy Judge to quit interpreting the law and start applying it." *In re Lumsden*, 112 B.R. 978, 979 (Bankr. W.D.Mo.1990). In this case, § 1322(b)(2) is clear: a Chapter 13 plan may not modify the rights of a secured creditor whose claim is secured only by a security interest in real property that is the debtor's principal residence. Because Commerce's claim is secured only by the Debtors' principal residence, its rights may not be modified. Debtor's proposal to pay Commerce's claim over the life of the plan, regardless of the economic consequences, modifies Commerce's rights and such modification is impermissible. Accordingly,

IT IS ORDERED that Commerce's Objection to Confirmation of Debtors' Chapter 13 Plan is SUSTAINED and Confirmation is DENIED.