In re Wayne A. SPANO and Eva J. Spano, Debtors.

Bankruptcy No. 93–50480. Document No. 4.

United States Bankruptcy Court, D. Connecticut.

Dec. 7, 1993.

---

16. This conclusion makes it unnecessary to deal with the trustee's additional claims involving § 157(b)(2)(A), (E), and (O).

Frank Sacramone, Jr., Sacramone & Crane, P.C., Hamden, CT, for debtors/movants.

Molly T. Whiton, Law Offices of Thomas W. Witherspoon, Jr., Farmington, CT, for respondent.

## MEMORANDUM AND ORDER ON DEBTORS' MOTION TO DETERMINE THE SECURED STATUS OF LIENS IN CHAPTER 13

ALAN H.W. SHIFF, Bankruptcy Judge.

The issue presented here is whether the respondent's claim is secured "only by a security interest in real property that is the debtor's principal residence" within the meaning of that term of art in § 1322(b)(2) when the claim is secured by a mortgage which encumbers not only land and improvements but also rents and fixtures, and which requires the debtors to maintain hazard insurance for the benefit of the respondent. For the reasons that follow, I conclude that the respondent's claim is covered by that quoted language from § 1322(b)(2) and because that claim is also in part a "secured claim" within the meaning of that term of art in § 506(a), no portion of the respondent's claim may be modified by the debtors' proposed plan.

### Background

The debtors commenced this chapter 13 case on February 10, 1993. They own a single family residence which is encumbered by a first mortgage held by the respondent. On March 25, 1993, the respondent filed a proof of claim which stated that as of the commencement of this case, the balance due on the note secured by its mortgage was $130,105.15. On April 7, 1993, the debtors filed the instant motion, seeking a determination that a portion of the respondent's claim is unsecured under § 506(a) and may be treated as such by their chapter 13 plan. *See* Rule 3012 F.R.Bankr.P. The parties agree that at the commencement of this case the value of the residence was $73,500.00.

The respondent's November 15, 1988 mortgage is on a Veterans' Administration form. The granting clause states in relevant part:

That the mortgagor ... does hereby give, grant, bargain, sell, assign and confirm unto the mortgagee ... the lands, premises and property ... with the buildings and all other improvements thereon, known as ... [the address and legal description of the property are here inserted][1] together with all and singular the privileges and appurtenances thereunto belonging or appertaining, and the *rents,* issues and profits thereof (provided, however, that the mortgagor shall be entitled to collect and retain the said rents, issues and profits until default hereunder), and *all fixtures now or hereafter attached to or used in connection with the premises herein described;* and in addition thereto the following described household appliances, which are, and shall be deemed to be, fixtures and a part of the realty ... [none are listed in a blank provided] (emphasis added).

Paragraph 9 of the mortgage states:

Upon·a default in any of the covenants of this mortgage, the mortgagee shall be entitled, without notice to the mortgagor, to the immediate appointment of a receiver of the property ...; and upon any such default, whether or not a receiver has been appointed, the mortgagee may proceed to collect the rents and benefits of said property and apply the same against any sums secured by this mortgage.

In addition, paragraph 5 of the mortgage requires the debtors to maintain hazard insurance in an amount acceptable to the respondent, which is to be listed as loss payee with the right to receive any payment for loss. The respondent is obligated to apply the proceeds "at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged." In the event of a foreclosure or transfer in lieu thereof, the debtors' inter-

est in the policies passes to the purchaser or grantee.

## Discussion

The debtors acknowledge that the Supreme Court's June 1, 1993 decision in *Nobelman v. Am. Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) would preclude the treatment they propose for the respondent's mortgage if the protection from modification in § 1322(b)(2) applies to the respondent's claim. That subsection provides that a chapter 13 plan may

modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence [this clause will be referred to as the *other than* clause], or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

*Nobelman* held that where an undersecured claim is secured "only by a security interest in real property that is the debtor's principal residence," the unsecured claim resulting from the bifurcation of that undersecured claim may not be modified, because § 1322(b)(2) protects both the secured and unsecured components of the claim.

The debtors argue that the respondent does not hold a security interest only in real property that is the debtor's principal residence. They focus on the above-quoted mortgage provisions which, in addition to a security interest in the land and improvements, grant the respondent a security interest in rents and fixtures and give it certain rights with respect to the proceeds of hazard insurance. The respondent, on the other hand, argues that those attributes of the mortgage are all a part of a single grant of a security interest in the residence. The answer centers on whether the real property conceptually includes each of the enumerated items of collateral.[2] I note at the outset that

1. The address of the residence specified on the respondent's proof of claim and in the instant motion and supporting appraisal is 55 Ownly Avenue, West Haven, Connecticut. The respondent's mortgage describes the residence as No. 46 Ownly Avenue. No challenge has been made to the sufficiency of the property description in the mortgage.

2. The issue of whether a mortgagee holds a security interest in specified collateral is distinct from the issue of whether that interest is perfected or enforceable. The latter issue has no bearing on the outcome of the instant proceeding. For example, if a creditor has a security interest in personal property, it is irrelevant that the creditor may not have perfected that interest by filing a Uniform Commercial Code financing state-

the *Nobelman* Court did not address that issue.[3]

## I. "Boilerplate"

I ascribe no weight to the respondent's contention that the language in the mortgage granting it security interests in rents and fixtures is mere "boilerplate." *See Hirsch v. Citicorp Mortgage Corp. (In re Hirsch)*, 155 B.R. 688, 690 (Bankr.E.D.Pa.1993). The language was presumably included in the mortgage instrument for a reason. Were the debtors to dispute the extent of the respondent's security interest, I have little doubt that the respondent would vigorously defend its right to a security interest in every item of collateral described by the "boilerplate." Further, it is irrelevant that the respondent may have had no subjective intent to acquire a security interest in personal property or in real property that is not the debtor's principal residence. *See Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 129 (3d Cir. 1990). The mortgage instrument is the best indicator of the respondent's intent, and if that instrument gives the respondent a security interest in property not covered by the *other than* clause, then the respondent is not protected by § 1322(b)(2).

On the other hand, the fact that the respondent's mortgage may have used many words to describe component parts of the real property when the words "real property" may have sufficed, does not mean that the respondent has a security interest in something other than the "real property that is the debtor's principal residence." If each item of the respondent's collateral may fairly be included within that phrase, then the respondent's claim is covered by the *other than* clause. It is beyond question, for example, that the granting of a security interest in the land and in the "buildings and ... improvements thereon" does not remove the respondent's mortgage from those protected under § 1322(b)(2).

## II. "Real Property"

■ As noted, the holder of a secured claim is protected by § 1322(b)(2) if its claim is secured only by a security interest in the bundle of rights included within the phrase "real property that is the debtor's principal residence."[4] There is no dispute here that the property is the debtor's principal residence. The remaining issue is whether each item of collateral encumbered by the mortgage is embraced by the term "real property." That term is not defined in the code. In the absence of a controlling federal rule, I must turn to Connecticut law to determine what rights are included. *Nobelman, supra,* —— U.S. at ——, 113 S.Ct. at 2110; *El Cid, Ltd. v. New Jersey Zinc Co.*, 575 F.Supp. 1513, 1517 (S.D.N.Y.1983) (rights to real property are determined by the law of the property's situs), *aff'd*, 770 F.2d 157 (2d Cir.),

ment. Connecticut Uniform Commercial Code § 42a–1–201(37) (West Supp.1993) (a "security interest" in personal property is an interest in such property to secure payment or performance of an obligation); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 129 (3d Cir.1990); *Bender v. Commonwealth Mortgage Co. of Amer. (In re Bender)*, 86 B.R. 809, 814 (Bankr.E.D.Pa. 1988). *See also Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34 (3d Cir.1993) (discussing the distinction between a security interest in rents and the ownership of rents); *Vienna Park Properties v. United Postal Sav. Ass'n (In re Vienna Park Properties)*, 976 F.2d 106, 112 (2d Cir.1992) (discussing the distinction between the existence of and the perfection or enforceability of a security interest in rents).

**3.** The deed of trust in *Nobelman* provided for a security interest in "an undivided .67% interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents." *Nobelman v. Am. Sav. Bank*

*(In re Nobelman)*, 129 B.R. 98, 104 (N.D.Tex. 1991). That language implicates the *other than* clause. The district court concluded that that language did not remove the claim from the protection of § 1322(b)(2). *Id.* The Fifth Circuit affirming the district court decision noted that language without specifically addressing its effect. *Nobleman v. Am. Sav. Bank (Matter of Nobleman)*, 968 F.2d 483, 484 n. 3. The *Nobelman* Court neither noted nor addressed the effect of that language.

**4.** I have determined in another context that a plan may modify the rights of a holder of a second mortgage whose claim is secured only by that security interest in the debtor's principal residence but who holds no "secured claim" within the meaning of § 506(a), because § 1322(b)(2) on its face operates to protect only the rights of creditors who hold some "secured claim" within the meaning of § 506(a). *In re Hornes*, 160 B.R. 709 (Bankr.D.Conn.1993).

*cert. denied,* 474 U.S. 1021, 106 S.Ct. 573, 88 L.Ed.2d 557 (1985). There is nothing in § 1322(b)(2) to suggest that "real property" should be construed more narrowly in that subsection than it is construed under Connecticut law. *Cf. First Brandon Nat'l Bank v. Kerwin (In re Kerwin),* 996 F.2d 552, 558 (2d Cir.1993) ("Absent any evidence that Congress ... sought to restrict what property could be transferred under § 1225(a)(5)(B), we are unwilling to read narrowly its broad language to restrict the usual expansive understanding comprised by the term 'property.' ").

## A. Rents

### 1. Rents as Illusory Collateral

■ Parenthetically it might be argued that if there was no rent from the debtor's principal residence on the petition date, the respondent did not have any such collateral to support its claim. I reject that argument. The code defines a "security interest" as a "lien created by an agreement." § 101(51). A "lien" is a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37). Thus by virtue of its mortgage, the respondent had an interest in any rents, even if such rents did not exist on the petition date.[5] The respondent would, for example, probably be able to claim rents as its cash collateral even if the residence were leased for the first time after the petition was filed. *See* § 552(b).

■ *Nobelman* does not hold otherwise. Indeed, *Nobelman* teaches that the value of a creditor's security interest in estate property does not determine whether or not that creditor has a claim that is covered by the *other than* clause. The phrase "secured only by a security interest" in the *other than* clause refers to whether the mortgage instrument purports to grant a security interest in the collateral specified, and not to whether there is actually value to support that interest under § 506(a). *Id.* —— U.S. at ——, 113 S.Ct. at 2111. *See Matter of Graham,* 144 B.R. 80, 84 (Bankr.N.D.Ind.1992) ("The issue should be whether or not, as a matter of state law, the obligation in question was secured by something other than residential real estate.... [T]he fact that a lien is economically worthless and, thus, does not constitute a secured claim pursuant to § 506(a), is not relevant....").[6]

### 2. Rents as Real Property

■ Under Connecticut law, a lease is carved out of the underlying fee estate and the right to rents is incident to the ownership of the reversion. "A lease transfers an estate in real property to a tenant for a stated period, with a reversion in the owner after the expiration of the lease. Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself." *Jo-Mark Sand and Gravel Co. v. Pantanella,* 139 Conn. 598, 601, 96 A.2d 217 (1953). *See also White v. DeVito Realty Co.,* 120 Conn. 331, 334, 180 A. 461 (1935) ("A lease is, in effect, a conveyance of an interest in the leased premises."). Real property includes the "tenements" that arise from land, and the tenements include the rents. *Mitchell v.*

---

5. The mortgage does not prohibit the leasing of the residence. Indeed, federal law prohibits the use of a "due-on-sale" clause to accelerate a loan due to the mortgagor's leasing of residential real property containing less than five dwelling units for a term of three years or less, provided the lease does not contain an option to purchase. *See* Garn–St. Germain Federal Depository Institutions Act of 1982, 12 U.S.C.A. 1701j–3(d)(4) (West 1989).

6. The situation in which a creditor takes a security interest in intangible collateral that could, but happens not to, exist as of the petition date is distinguishable from the situation in which a creditor *had* a security interest in collateral not covered by the *other than* clause but released its security interest in that collateral prepetition. *See, e.g., In re Boisvert,* 156 B.R. 357, 359 (Bankr. D.Mass.1993) (a creditor which had security interests in parcels of real estate other than the debtor's principal residence, but released those security interests prepetition in return for partial payment of the claim, was covered by the *other than* clause). For example, a creditor who had taken and perfected a security interest under the Uniform Commercial Code in accounts receivable of a debtor's business, in addition to a lien on the debtor's residence, would be excluded from § 1322(b)(2)'s protections even if no accounts receivable were outstanding on the petition date.

*Warner,* 5 Conn. 497, 518 (1825) ("[F]rank-tenement or freehold is applicable not only to lands, but to offices, *rents,* commons and the like; which, although not visible or tangible, are of a permanent nature.") (emphasis in original). In the absence of an agreement to the contrary, the purchaser of land in Connecticut purchases the right to collect rents from the land. *See Arbeiter v. Day,* 39 Conn. 155 (1872) (a seller proved that he had contracted to retain the right to receive rents from the tenant notwithstanding the fact that such right is generally conveyed with the reversion). Just as a lease evidences the giving up of possession of the land and improvements for a stated period, rent represents the payment for that "stick" out of the bundle of property rights of the owner of the fee. *See Spector Motor Serv., Inc. v. Walsh,* 135 Conn. 37, 69, 61 A.2d 89 (1948) ("rent" used in its "technical meaning [is] compensation paid for the occupancy of real property" as opposed to money paid for the use of personalty); *W.S. Quinby Co. v. Sheffield,* 84 Conn. 177, 190, 79 A. 179 (1911) ("Whatever a tenant is required to pay as a compensation for the right to occupy land may generally be termed rent.").

■■■ Connecticut law dealing with the grant and enforcement of security interests in rents reinforces the conclusion that rents are a part of the bundle of rights that comprise real property. The owner of the land may transfer or encumber an interest in rents and leases just as he or she may transfer or encumber any other part or all of the real estate. *See T.A.D. Jones Co. v. Winchester Repeating Arms Co.,* 55 F.2d 944, 946–47 (D.Conn.) (lessor's assignee may maintain action for collection of rent), *aff'd,* 61 F.2d 774 (2d Cir.1932), *cert. denied,* 288 U.S. 609, 53 S.Ct. 401, 77 L.Ed. 983 (1933). When the landowner does so, that assignment of rents is treated as an interest in the underlying real estate. *Matter of Sansone,* 126 B.R. 16, 18 (Bankr.D.Conn.1991); *see also* Conn.Gen.Stat. § 49–10 (West Supp. 1993) (an assignment of an obligation secured by an assignment of rent will vest title to the rents in the grantee if the instrument of transfer is "executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledge-

ment of deeds of land ..."); Conn.Gen.Stat. § 42a–9–104(j) (West 1990) ("the creation or transfer of an interest in or lien on real estate, *including a lease or rents thereunder*" is excluded from the Connecticut Uniform Commercial Code) (emphasis added).

■■■ Because a lease and the rents that arise under it are a part of the realty, under Connecticut law, "a mortgagee's right to rents is perfected from the time that the mortgage is recorded." *Matter of Sansone, supra,* 126 B.R. at 18. Further, at least in the absence of a superseding agreement, a mortgagee has the right to rents upon taking actual possession, or constructive possession through a court appointed receiver. *See New Haven Sav. Bank v. Gen'l Fin. & Mortgage Co.,* 174 Conn. 268, 270–71, 386 A.2d 230 (1978); *Desiderio v. Iadonisi,* 115 Conn. 652, 654–56, 163 A. 254 (1932); *In re Gaslight Village, Inc.,* 6 B.R. 871, 874 (Bankr.D.Conn. 1980). Significantly, the mortgagee has those rights even in the absence of a clause in its mortgage giving it the right to collect rents. *Goodwin v. Keney,* 49 Conn. 563, 568 (1882). It is thus apparent that under Connecticut law a security interest in land includes certain rights to rents arising from the land, indicating that the land and the rents are integral parts of the bundle of real property rights.

Most courts have held that rents are a part of the real property that is the debtor's principal residence. In *Allied Credit Corp. v. Davis (In re Davis),* 989 F.2d 208, 212–13 (6th Cir.1993), the court held that a grant of a security interest in "the Hereditaments and Appurtenances, rents, royalties, profits, and fixtures" did not remove the mortgage from the protection of § 1322(b)(2), finding that those items were "merely incidental to an interest in real property" and "inextricably bound to the real property itself as part of the possessory bundle of rights." The court further noted that "[w]here an interest in 'rents and profits' is taken in purely residential, non-rental property, courts have rejected the proposition that the interest constitutes additional security." *Id.* at 213 n. 1. *Accord Equity Inv. Co. v. Moreland (Matter of Moreland),* 124 B.R. 921, 922 (Bankr.

D.Conn.1991) (inclusion of rents, fixtures and other items "does not create additional collateral for the claim distinct from that normally considered incidental to ownership of realty within the contemplation of § 1322(b)(2)"); *In re Pruitte,* 157 B.R. 662, 664 (Bankr. E.D.Mo.1993); *In re Lee,* 137 B.R. 285, 287 (Bankr.E.D.Wis.1991); *Dent v. Associates Equity Servs. Co., Inc. (In re Dent),* 130 B.R. 623, 628 (Bankr.S.D.Ga.1991); *Wright v. C & S Family Credit, Inc. (In re Wright),* 128 B.R. 838, 843 (Bankr.N.D.Ga.1991) ("rents and profits ... are incorporeal hereditaments, which are part of the possessory bundle of rights known as seizin and are, therefore, inextricably bound to the real property itself"); *In re Hougland,* 93 B.R. 718, 720–21 (D.Or.1988), *aff'd,* 886 F.2d 1182 (9th Cir. 1989). Courts holding to the contrary may have done so at least in part due to differences between the applicable state law and Connecticut law as described above. *See, e.g., In re Jackson,* 136 B.R. 797, 802–03 (Bankr.N.D.Ill.1992) (rents, issues and profits were collateral other than a principal residence where, under Illinois law, a mortgagee had no right to rents absent an express pledge thereof); *In re Klein,* 106 B.R. 396, 400 (Bankr.E.D.Pa.1989); *but see Sapos v. Provident Inst. of Sav. in the Town of Boston,* 967 F.2d 918, 925 (3d Cir.1992) (apparently finding that wall-to-wall carpeting, rents and profits were items of personalty rather than realty).

I therefore conclude that the rents are part of the "real property that is the debtor's principal residence," and that the respondent's security interest in rents does not remove it from the protection of the *other than* clause of § 1322(b)(2).[7] I am limiting the scope of this decision to a debtor's principal residence that is not designed to include more than one dwelling unit. In doing so, I distinguish this case from my holding in *In re Davidson,* Case No. 91–51199 (Bankr.D.Conn., Feb. 26, 1992), in which I held that a mortgage encumbering property consisting of more than a single dwelling unit was not protected from modification by § 1322(b)(2).[8]

**B. Fixtures**

Connecticut law defines fixtures as items which have become part of real property because the party annexing them to the realty intends that result.

> To constitute a fixture, it is essential "that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which [the realty] was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a *permanent accession to the freehold was intended to be made by the annexation of the article.*" *Capen v. Peckham,* 35 Conn. 88, 94 [1868].

*Norwalk Vault Co. of Bridgeport, Inc. v. The Mountain Grove Cemetery Ass'n,* 180 Conn. 680, 686–87, 433 A.2d 979 (1980) (emphasis added). The court in *Norwalk Vault Co.* held that the crypts at issue in the case were fixtures and therefore "conveyed as part of the cemetery realty." *Id.* at 690–91, 433 A.2d at 983–84. In *Waterbury Petroleum Prods., Inc. v. Canaan Oil and Fuel Co., Inc.,* 193 Conn. 208, 215–20, 477 A.2d 988

---

7. Paragraph 9 of the respondent's mortgage attempts to enhance the respondent's common law remedies by giving it the right to rents upon the debtors' default without taking possession of the property or having a receiver appointed. The fact that the respondent may be able to realize upon its collateral more quickly and with less expense than it could if it relied only on its common law rights does not alter the fact that the respondent's security interest extends only to the "real property that is the debtor's principal residence," which phrase embraces the rents.

8. *Cf. Zablonski v. Sears Mortgage Corp. (In re Zablonski),* 153 B.R. 604, 606 (Bankr.D.Mass. 1993) (a mortgage encumbering a two family home was not protected from modification under § 1322(b)(2)); *In re McVay,* 150 B.R. 254, 257 (Bankr.D.Or.1993) (a mortgage encumbering a bed and breakfast, which was the debtor's principal residence but which had "inherent income producing power which the debtors are utilizing," was not protected by § 1322(b)(2)); *In re Jackson, supra,* 136 B.R. at 803 (a mortgage encumbering a two-flat unit, where the debtor lived in one unit and occasionally rented the other, was not protected).

(1984), the court held that certain fuel tanks were personalty, not fixtures, and were therefore conveyed to the purchaser of the personalty, and not to the purchaser of the land.

 Connecticut law also recognizes that "an article may retain its chattel character between a vendor and vendee but remain real property as between a mortgagor and mortgagee." *Merritt–Chapman and Scott Corp. v. Mauro,* 171 Conn. 177, 185, 368 A.2d 44 (1976). Indeed, under Connecticut law "[t]here is a strong tendency as between mortgagor and mortgagee to hold that ... [fixtures; here, attachments for a bowling alley] are a part of the realty whereas, in the case of landlord and tenant or other holder of a limited term, the tendency is the other way. The reason for this rule is that the owner of the equity is presumed to make improvements for the permanent benefit of the property...." *Id.* at 183, 368 A.2d at 47 (quoting *Lesser v. Bridgeport–City Trust Co.,* 124 Conn. 59, 64, 198 A. 252 (1938)). While property may be contractually designated as personal property for the protection of the vendor, that property reverts to realty when the vendee's obligation to the vendor is discharged. *Lesser, supra,* 124 Conn. at 65, 198 A. at 254.

 The debtors point to a section of the Connecticut Uniform Commercial Code ("CUCC") that deals with fixtures, Conn. Gen.Stat. § 42a–9–313 (West 1990), to support the proposition that the term "fixtures" as used in the mortgage embraces items of personal property. However, that section does not define fixtures to be personal property, but exists to address the priority conflict that may arise when a lender, typically a vendor, holds a security interest in goods which are or may become annexed to realty that is encumbered by a mortgage. Comment 4 to § 42a–9–313 (that section deals with situations in which "real estate law gives

real estate parties an interest in the goods," in which event "a conflict arises and this section states the priorities"). The CUCC recognizes that "goods are 'fixtures' when they become so related to particular real estate *that an interest in them arises under real estate law.*" *Id.* at § 42a–9–313(1)(a) (emphasis added). Further, while the CUCC is generally not applicable to the creation of security interests in real estate, an express exception is made for fixtures governed by § 42a–9–313, indicating that an Article 9 security interest in fixtures may in fact be a security interest in real estate. *See id.* at § 42a–9–104(j).[9]

 The debtors also rely on *In re Reeves,* 65 B.R. 898 (N.D.Ill.1986), however, that case is readily distinguishable. There, a claim was evidenced by a retail installment contract for certain home improvements, which was secured by a second mortgage on the residence. The *contract,* not the mortgage, purported to grant the seller/mortgagee "a security interest, under the Uniform Commercial Code or other applicable law, in the above-described goods and all accessories, parts and other property now or hereafter at any time owned by Buyer and installed therein or affixed thereto ... and all proceeds thereof; and ... all present and future obligations of Buyer under this contract shall be secured by a Trust Deed (Mortgage) on the real property...." *Id.,* at 900 n. 5. The contract also gave the seller the right to proceeds of the disposition of the "goods" after repossession. The court construed the language in the contract to demonstrate an intent to obtain a security interest in goods, which would retain their character as personal property notwithstanding attachment to the real estate. The court found that the mortgage, which itself purported to cover "fixtures," was intended to create only a lien upon real property fixtures, but that the

---

9. Other CUCC provisions support the conclusion that fixtures are treated as real property in the CUCC. A financing statement intended to perfect a security interest in fixtures must be filed "in the office where a mortgage on the real estate would be filed or recorded...." *Id.* at § 42a–9–313(1)(b). A fixture financing statement must, unlike other financing statements, include the name of the owner of record of the property, if other than the debtor, and a sufficient description of the real property on which the fixture is located. *Id.* at § 42a–9–402(5). Those requirements are designed to ensure that real estate title examiners will find the fixture filings in performing title searches in the real estate records. *Id.* at Comments 1 and 7 to § 42a–9–313.

contract was intended to create a security interest in "goods" that were personalty. *Id.* at 901.[10]

I find no indication of an intent to acquire an interest in items of personal property in the instant case. The respondent is not a vendor of personal property which might be annexed to real estate, seeking to protect the priority of its security interest as against a real estate lienor. The debtors' sole security instrument is a mortgage. The language immediately following the reference to "fixtures" describes "household appliances, which are, and shall be deemed to be, fixtures and a part of the realty...."[11] That language supports the interpretation that the term "fixtures" as used in the mortgage is limited to items of real property.[12] Paragraph 5 of the mortgage requires the maintenance of hazard insurance only on the "improvements now and hereafter on said premises." The fact that the respondent did not require hazard insurance on any item of personalty indicates its intent not to have personalty as security. Further, while certainly not conclusive, the consistent use of the term "mortgage" rather than the CUCC term "security agreement," the use of the term "this deed" following paragraph 12, and the absence of any reference to the term "security interest" or to the CUCC buttress the conclusion that the parties never intended to create an interest in personalty.[13] Accordingly, I conclude that the granting of a security interest in fixtures does not eliminate the respondent's protection from modification under the *other than* clause.

Most courts that have considered this issue have reached the same conclusion. *See, e.g., In re Davis, supra,* 989 F.2d at 212; *In re Pruitte, supra,* 157 B.R. at 664; *In re Ireland,* 137 B.R. 65, 70 (Bankr.M.D.Fla.1992); *Matter of Moreland, supra,* 124 B.R. at 922; *In re Wright, supra,* 128 B.R. at 843; *In re Jackson, supra,* 136 B.R. at 801. Most

---

10. Indeed, the Bankruptcy Court for the Northern District of Illinois, which would as a general matter be obligated to follow the decision of the District Court for the Northern District of Illinois, has afforded *In re Reeves* the same construction I have given it today. *In re Jackson, supra,* 136 B.R. at 801 (a mortgage granting a lien on "all apparatus and fixtures of every kind for the purpose of supplying or distributing heat, light, water or power, and all plumbing and other fixtures" did not constitute additional security removing claim from protection of § 1322(b)(2)).

11. As noted *supra* at p. 883, no household appliances are listed in a blank provided for that purpose.

12. The mortgage refers to fixtures "attached to *or used in connection with*" the residence. I do not believe that the reference to fixtures which are used in connection with, but not "attached to," the property indicates any intent to acquire an interest in items of personalty. The security interest extends only to items which are, in the first instance, "fixtures," and under Connecticut law that term refers to items in which a real property interest exists. Further, as noted, under Connecticut law, the intention of the annexer as to whether an item is to be a part of the real estate controls the determination of whether that item is a fixture. *Waterbury Petroleum Prods., Inc., supra,* 193 Conn. at 216, 477 A.2d at 993. While physical attachment to the land is certainly a factor to be considered in determining intent, it does not appear to be a prerequisite, so that an item could be used in connection with the land, but not permanently attached to it, and still be a real property fixture, especially where the use of the item is particularly adapted to the uses of the portion of the building in which the item is located. *See, e.g., Germain v. Hobart Corp. (Matter of New London Store Fixture Co., Inc.),* 98 B.R. 130, 131 (Bankr.D.Conn.1989) (commercial dishwasher which was not bolted to the floor, but was connected to building utilities, was heavy and would have to be divided into segments to be removed, was a fixture under Connecticut law).

13. In addition, the mortgage form is promulgated under authority of the Veterans Administration ("VA") and incorporates certain federal enabling statutes by reference. Under those statutes, the VA guarantees or insures only real property loans. The VA will guarantee a loan "to purchase or construct a dwelling to be owned and occupied by the veteran as a home." 38 U.S.C.A. § 3710(a)(1) (West 1991 & Supp. 1993). The term "dwelling" is defined as "[a]ny building designed primarily for use as a home ...", and includes a manufactured home only if it is "permanently affixed to a lot owned by a veteran and classified as real property under the laws of the State where it is located." 38 C.F.R. § 36.4301 (1993). If the loan is in fact guaranteed or insured by the VA (no evidence was adduced on that issue), paragraph 12 of the mortgage provides that the provisions of Title 38 and the regulations would control over those of the loan documents. In any event, the enabling statute and regulations indicate an intent by the VA, which promulgated the form, that the mortgage encumber the building that is the dwelling, which would exclude items of personal property.

courts finding a security interest in items not covered by the *other than* clause have construed language clearly intended to create a security interest in personalty. *See, e.g., Wilson v. Commonwealth Mortgage Corp., supra,* 895 F.2d at 124, 128–29 (interest in "not only the real estate but also 'any and all appliances, machinery, furniture and equipment (whether fixtures or not)'"); *In re Klein, supra,* 106 B.R. at 400 (interest in heating devices); *Kessler v. Homestead Sav. (In re Kessler),* 99 B.R. 635, 637 (Bankr. E.D.Pa.1989) (interest in "'plumbing, cooking, hearing [sic], lighting fixtures, appliances' and other appurtenances to the realty as well as ... the realty itself"); *In re Jakes,* 99 B.R. 393 (Bankr.M.D.Tenn.1989) (interest in proceeds from the sale of fixtures); *Caster v. United States (In re Caster),* 77 B.R. 8, 9, 11 (Bankr.E.D.Pa.1987) (interest in "appliances, machinery, furniture and equipment (whether fixtures or not)"); *In re Reeves, supra,* 65 B.R. at 901.

## C. Casualty Insurance Proceeds

■ As noted, the mortgage gives the respondent the right to use the proceeds of casualty insurance on the realty, in the mortgagee's discretion, either to apply toward its debt or to use for the repair of the damaged property.[14] The respondent's right to receive proceeds from hazard insurance does not constitute collateral other than the real property that is the debtor's principal residence. Unlike rents or fixtures, which could under certain circumstances exist in addition to the land and buildings and provide additional security thereto, the hazard insurance proceeds have no independent existence apart from the improvements insured. The proceeds will come into existence only if and to the extent the improvements are damaged. Hazard insurance proceeds are similar to proceeds from the condemnation of the mortgaged property, on which proceeds the mortgagee generally has a lien to secure its debt. *Kaufman v. Valente,* 115 Conn. 428, 434, 162 A. 693 (1932) (eminent domain award "is a substitute for so much of the mortgaged property as is appropriated for public use and the mortgagee has in equity a lien on the award ..."). Just as rents are the money equivalent of the *possession* stick from the bundle of rights that is the real property, so hazard insurance proceeds are the money equivalent of the *improvements* (i.e. bricks and mortar) stick from that bundle. That the policy is considered incidental to the real property improvements is further indicated by the provision in paragraph 5 that the policy will pass to the purchaser of the property at a foreclosure sale, whether or not the purchaser is the respondent.

Further, unlike tangible personal property or rents, as to which a mortgagee might not seek a security interest, it is not reasonable to expect a mortgagee to forego its right to receive hazard insurance proceeds upon the destruction of the improvements. Without a provision such as paragraph 5, the real property security would be meaningless. The mortgagee would be placed in the untenable position of having its borrower walk away with insurance proceeds in the event of a casualty, leaving the mortgagee with little more than ashes. *See In re Davis, supra,* 989 F.2d at 212 (hazard insurance is an element of adequate protection of the existing collateral, and is thus not additional collateral).[15]

**14.** The mortgage does not expressly grant the respondent a security interest in the policy or return or unearned premiums, indicating the parties' intent that the insurance is not additional security. *See In re Braylock,* 120 B.R. 61, 63 (Bankr.N.D.Miss.1990) (designation of a lender as credit life insurance beneficiary may not create a security interest in the policy). The respondent may nevertheless hold a "security interest" in the policy or its proceeds under the broad definition afforded that term in the code. *See supra,* p. 885.

**15.** An interest in hazard insurance is distinguishable from an interest in credit life or disability insurance. *Compare Matter of Washington,* 967 F.2d 173, 174–75 (5th Cir.1992); *In re Williams,* 161 B.R. 27, 28–29 (Bankr.E.D.Ky.1993) *and In re Braylock,* 120 B.R. 61, 63–64 (Bankr.N.D.Miss. 1990) (credit life insurance is not additional collateral) *with In re Selman,* 120 B.R. 576, 579 (Bankr.D.N.M.1990) (credit life and hazard insurance policies constituted additional collateral); *Transouth Fin. Corp. v. Hill,* 106 B.R. 145, 147 (W.D.Tenn.1989) *and In re Wilson,* 91 B.R. 74, 76 (Bankr.W.D.Mo.1988) (credit life and disability insurance and interest in return premiums were additional collateral).

Most courts agree that a provision entitling a mortgagee to hazard insurance proceeds does not constitute an interest in collateral other than real property that is the debtor's principal residence. *See, e.g., In re Davis, supra,* 989 F.2d at 211; *In re Jackson, supra,* 136 B.R. at 802; *In re Braylock,* 120 B.R. 61, 63 (Bankr.N.D.Miss.1990) (dicta).[16]

### ORDER

Because the respondent's claim is secured only by a security interest in real property that is the debtor's principal residence, and because the respondent's claim is secured in part after application of § 506(a), *Nobelman* precludes the treatment of any portion of the respondent's claim as unsecured. Accordingly, the debtors' motion is denied, and IT IS SO ORDERED.

---

**16.** While not at issue in this case, mortgages frequently encumber mineral rights and the like. Under Connecticut law, such rights are clearly an integral part of the fee ownership of the land, until and unless they are severed from the surface estate. *See Miller v. State of Connecticut,* 121 Conn. 43, 47, 183 A. 17 (1936) (the owner of land may convey the surface or soil in fee and reserve an estate in minerals or a right to mine them; may convey a fee estate in minerals only; or may grant or lease the right to mine minerals while retaining the fee in minerals); *City of New Haven v. Hotchkiss,* 77 Conn. 168, 173, 58 A. 753 (1904) (the owner of the fee may reserve mining rights from a conveyance of the fee, in which event the fee to minerals is conveyed, and the grantor retains only the privilege to enter on the land and remove minerals which become the grantor's property once removed); *Hartford & Salisbury Ore Co. v. Miller,* 41 Conn. 112, 129 (1874) ("Mineral and ore rights, when severed from the land and owned by tenants in common, are real estate...."); *cf., Hernandez v. Union Nat'l Bank of Arkansas (In re Hernandez),* 149 B.R. 441, 445 (Bankr.E.D.Tex.1993) (a security interest in oil, gas and mineral rights did not remove the mortgage from the protection of § 1322(b)(2)).